**NCS HEALTHCARE, INC., Appellant,**

v.

**CANDLEWOOD PARTNERS, LLC, et al., Appellees.**

[Cite as *NCS Healthcare, Inc. v. Candlewood Partners,
LLC,* 160 Ohio App.3d 421, 2005-Ohio-1669.]

Court of Appeals of Ohio,
Eighth District, Cuyahoga County.

No. 84646.

Decided April 7, 2005.

422

Porter, Wright, Morris & Arthur, Hugh E. McKay, and John A. Mugnano, for appellant.

Rotatori, Bender, Gragel, Stoper & Alexander Co., L.P.A., Richard L. Stoper Jr., Susan L. Gragel, and Robert J. Rotatori; and Jenner & Block, James A. McKenna, and Anders C. Wick, for appellees.

ANTHONY O. CALABRESE JR., Judge.

{¶ 1} Plaintiff-appellant, NCS Healthcare, Inc. ("NCS"), appeals from the decision of the trial court. Having reviewed the arguments of the parties and the pertinent law, we hereby affirm the lower court.

I

{¶ 2} NCS brought this action to recover fees paid by the former board of directors to former financial advisors, appellees Candlewood Partners, LLC, and Candlewood Partners, Inc. ("Candlewood"), in connection with the acquisition of NCS by Omnicare, Inc.

{¶ 3} On June 3, 2003, NCS filed a three-count complaint against Candlewood. The complaint alleged that Candlewood was unjustly enriched and committed the

torts of aiding and abetting a breach of fiduciary duty and corporate waste by the former directors of NCS. Candlewood filed its motion to dismiss on July 7, 2003.

{¶ 4} Candlewood's primary ground for dismissal was that the merger agreement and company letter disclosed the amount of Candlewood's fees. In its motion, Candlewood stated that the fees were to be borne by Omnicare under the merger agreement, and NCS and Omnicare agreed to the fees by entering into the merger agreement and consummating the merger. Therefore, under Delaware law, Omnicare cannot use the corporate form of NCS to retroactively improve the deal at Candlewood's expense.

{¶ 5} As alternative grounds for dismissal, Candlewood also argued that (1) NCS's claim for aiding and abetting a breach of fiduciary duty was barred by the business-judgment rule, (2) NCS's claim for corporate waste was barred because the complaint, on its face, disclosed consideration, (3) NCS's claim of aiding and abetting was legally insufficient because it failed to allege facts constituting aiding and abetting, and (4) NCS's claim of unjust enrichment was barred by the existence of a contract and NCS's admitted acceptance of the benefit of Candlewood's services.

{¶ 6} NCS filed its opposition to Candlewood's motion to dismiss, and Candlewood filed a reply brief. The trial court granted Candlewood's motion to dismiss and dismissed NCS's complaint with prejudice on April 16, 2004.[1] NCS filed this appeal.

{¶ 7} The record reflects that NCS is an independent provider of pharmacy services to long-term care institutions, including skilled-nursing facilities, assisted-living facilities, and other institutional healthcare facilities. NCS is a Delaware corporation with its principal place of business located in Beachwood, Ohio. Candlewood is an investment banking firm based in Chagrin Falls, Ohio. Among other things, Candlewood served as financial advisor to NCS in connection with the Omnicare–NCS merger. The action in the case sub judice arises out of the

---

1. {¶ a} The trial court's journal entry stated the following: "Defendant(s) Candlewood Partners LLC (D1) and Candlewood Partners Inc.['s] (D2) motion to dismiss the complaint, filed 07/07/2003, is granted. The complaint fails to state a claim upon which relief may be granted. Presuming all factual allegations in the complaint are true, there is an agreement to compensate Candlewood for services.

{¶ b} "Attached to plaintiff's complaint is an agreement dated December 17, 2002. The agreement is signed by the chairman of NCS Healthcare, Inc., Jon H. Outcalt. The agreement clearly states the terms of compensation to Candlewood. Plaintiff's complaint further sets forth that NCS sent Omnicare a 'company letter' stating Candlewood Partners were paid professional fees amounting to $4,190,000.

{¶ c} "Plaintiff's complaint states 'the NCS Board unanimously approved the Omnicare merger agreement.' Plaintiff's complaint alone establishes the merger agreement was signed by the chairman of NCS, Omnicare was aware of the professional fees, and the agreement was approved by the Board."

January 2003 merger between NCS and its former competitor, Omnicare. In this merger, Omnicare became the sole shareholder of NCS.

{¶ 8} The merger between NCS and Omnicare resulted in an unanticipated and extraordinary cash purchase price payable to the NCS shareholders. Consequently, in December 2002, the NCS board of directors approved the payment of certain fees to Candlewood and other professionals. These fees were set forth and agreed to in the final merger agreement signed by both Omnicare and NCS on December 17, 2002. This agreement was later approved by the NCS shareholders.

{¶ 9} Following the Omnicare–NCS merger, NCS became a wholly owned subsidiary of its former competitor, Omnicare. On June 3, 2003, the new NCS, now owned and controlled by Omnicare, filed a complaint against Candlewood regarding the service fees. In its complaint, the new organization, still known as NCS, did not complain about the quality of Candlewood's work. Instead, NCS alleged that the former NCS board breached its fiduciary duties and committed corporate waste by paying Candlewood too much money for its services. However, appellee argues that Candlewood's fees were expressly agreed to and approved by Omnicare and NCS six months earlier in the merger agreement.

## II

### Merger Negotiations

{¶ 10} In January 1999, prior to the merger, NCS stock had traded at as high as $20 per share. However, by early 2001, NCS had defaulted on approximately $350 million in debt, and its shares traded in the range of $.09 to $.50 per share. In the summer of 2001, Omnicare sent NCS two proposals for acquisition of NCS, neither of which was accepted.

{¶ 11} Later, in May 2002, NCS and Genesis Health Ventures, Inc. began negotiations for the acquisition of NCS by Genesis. NCS and Genesis were close to executing a merger agreement by the end of the year. Around the same time, NCS learned that one of its financial advisors, Brown, Gibbons, Lang & Company, had a conflict that required it to withdraw. NCS entered into its first engagement letter with Candlewood in connection with a possible merger or sale of NCS on July 26, 2002. The agreement was terminable by either party with or without cause. Omnicare sent NCS a letter proposing an offer on that same day.

{¶ 12} Omnicare's offer proposed acquiring NCS for $3 per share in cash and repaying all NCS's creditors and note holders. Genesis then improved its offer and set a deadline for approval: July 28, 2002, at midnight. On July 28, 2002, Candlewood delivered a fairness opinion stating that the Genesis merger agreement was fair. The agreement provided that each NCS share would be convert-

ed into .1 share of Genesis common stock. That same day, Genesis and NCS entered into a merger agreement.

{¶ 13} On August 1, 2002, Omnicare and various NCS stockholders filed a lawsuit to enjoin the NCS–Genesis merger. Omnicare announced that it planned to launch a hostile tender offer for NCS shares. Omnicare offered $3.50 per share of NCS common stock, which offer NCS recommended that its shareholders reject. On September 13, 2002, Omnicare officials, including Joel Gemunder, the CEO, met with Glenn Pollack of Candlewood and other legal and financial advisors of NCS to discuss Omnicare's proposal. Omnicare provided NCS with a merger agreement at $3.50 per share similar to the Genesis agreement. The NCS board withdrew its recommendation to shareholders that they vote in favor of the Genesis transaction, and Candlewood withdrew its fairness opinion applicable to the NCS–Genesis merger.

{¶ 14} On December 9, 2002, Glenn Pollack of Candlewood and the CEO of Omnicare discussed the potential for increasing the price per share offered by Omnicare to the NCS stockholders. On December 12, 2002, Omnicare increased its tender offer from $3.50 per share to $5.50 per share. Glenn Pollack stated in his December 13, 2002 note that the value of the transaction to NCS and its shareholders and creditors increased from $190 million to $434 million. Due to this significant increase in the value of the Omnicare offer, NCS approved payment of a $3.5 million bonus to Candlewood. The NCS board decision was memorialized in a letter agreement.

{¶ 15} Candlewood delivered its fairness opinion stating that the $5.50 per share was fair. The NCS board approved the merger, and NCS and Omnicare entered into the merger. The merger agreement included a document captioned "company letter" provided by NCS to Omnicare. The company letter set forth more than $4 million in bonuses paid to NCS officers, directors, and employees, more than $7 million in professional fees paid to two law firms, and Candlewood's total fee of $4,190,000. The NCS Board unanimously approved the Omnicare merger agreement, and NCS and Omnicare entered into the merger agreement. Omnicare proceeded with the merger, which closed on January 16, 2003.

### III

{¶ 16} Appellant's assignment of error states the following: "The trial court erred to NCS's prejudice by failing to acknowledge NCS's allegations that the second Candlewood agreement lacked consideration, constituted corporate waste and was the product of a breach of fiduciary duty aided and abetted by Candlewood."

{¶ 17} A motion to dismiss for failure to state a claim upon which relief can be granted is procedural and tests the sufficiency of the complaint. *State ex rel. Hanson v. Guernsey Cty. Bd. of Commrs.* (1992), 65 Ohio St.3d 545, 605 N.E.2d 378.

{¶ 18} Recognizing the severity of granting such motions, the Supreme Court of the United States, in *Conley v. Gibson* (1957), 355 U.S. 41, 78 S.Ct. 99, 2 L.Ed.2d 80, held that a complaint should not be dismissed "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley,* 355 U.S. at 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80. The Supreme Court of Ohio, in *O'Brien v. Univ. Community Tenants Union, Inc.* (1975), 42 Ohio St.2d 242, 71 O.O.2d 223, 327 N.E.2d 753, adopted the analysis presented by the *Conley* court. "In construing a complaint upon a motion to dismiss for failure to state a claim, [appellate courts] must presume that all factual allegations of the complaint are true and make all reasonable inferences in favor of the non-moving party." *Mitchell v. Lawson Milk Co.* (1988), 40 Ohio St.3d 190, 192, 532 N.E.2d 753; see *York v. Ohio State Hwy. Patrol* (1991), 60 Ohio St.3d 143, 573 N.E.2d 1063. Thus, in deciding Civ.R. 12(B)(6) motions, trial courts are to construe a plaintiff's complaint liberally, giving every benefit of the doubt to the plaintiff.[2]

{¶ 19} While the factual allegations of the complaint are taken as true, "[u]nsupported conclusions of a complaint are not considered admitted * * * and are not sufficient to withstand a motion to dismiss." *State ex rel. Hickman v. Capots* (1989), 45 Ohio St.3d 324, 544 N.E.2d 639. Since factual allegations in the complaint are presumed true, only the legal issues are presented, and an entry of dismissal on the pleadings will be reviewed de novo. *Hunt v. Marksman Prod., Div. of S/R Indus., Inc.* (1995), 101 Ohio App.3d 760, 762, 656 N.E.2d 726.

{¶ 20} Documents attached to or incorporated in the complaint may be considered on a motion to dismiss pursuant to Civ.R. 12(B)(6). *State ex rel. Crabtree v. Franklin Cty. Bd. of Health* (1997), 77 Ohio St.3d 247, 249, 673 N.E.2d 1281.

---

**2.** Indeed, some commentators have argued that the analysis presented in *Conley* has been applied too liberally. "After the adoption of the federal rules, key cases stressed the liberal attitude of notice pleading underlying the [Federal Rules of Civil Procedure], often in language that, if taken too literally, would prevent almost any complaint from being dismissed for failure to state a claim pursuant to rule 12(b)(6)." Stempel, A Distorted Mirror: The Supreme Court's Shimmering View of Summary Judgment, Directed Verdict, and the Adjudication Process (1998), 49 Ohio St.L.J. 95 (discussing the analysis from the *Conley* case); see, generally, 5 Wright & Miller, Federal Practice and Procedure (1979), 598–605, Section 1357 (discussing, critically, the relative ease by which litigants can avoid dismissal for failure to state a claim despite the apparent unlikely success the case will have at trial).

{¶ 21} Appellant argues that the second engagement letter lacked consideration, constituted corporate waste, and was the product of a breach of fiduciary duty; however, we do not agree. The lower court acted properly when it held that the factual allegations of the complaint precluded NCS from challenging Candlewood's fees.

{¶ 22} As set forth in the complaint in the case at bar, Omnicare and NCS were fully aware of the merger agreement, company letter, and fees. The letter was part of the merger agreement and was signed by both NCS and Omnicare. Moreover, the NCS board unanimously approved the merger. The record clearly demonstrates that Omnicare entered into the merger agreement with NCS with full knowledge and acceptance.

{¶ 23} If NCS or Omnicare had any objections to Candlewood's fees as they were set forth in the December 17, 2002 letter, the second engagement letter, they should have refused to proceed with the merger. Furthermore, the merger did not close until January 16, 2003, well after December 17, 2002. The newly formed NCS accepted the benefits of Candlewood's services and the merger, having approved, ratified, and known all the facts relating to Candlewood's fees, and thereby NCS acquiesced in such fees and is barred from challenging them. The uncontradicted facts set forth above and discerned from the complaint demonstrate that appellant NCS acquiesced to Candlewood's fees.

{¶ 24} Appellant states that the December 17, 2002 second engagement letter providing additional fee terms constituted aiding and abetting, a waste of corporate assets, and a breach of the NCS board's fiduciary duties. However, we find no merit in appellant's argument. As previously stated, NCS, its directors, and its new shareholder, Omnicare, knew about the existence of both the July 2002 Candlewood first engagement letter and the December 17, 2002 Candlewood second engagement letter and the fee provisions contained therein.

{¶ 25} NCS, its directors, and new shareholder, Omnicare, also knew about the services rendered by Candlewood to enhance the value to NCS and its shareholders regarding the merger with Omnicare. NCS and Omnicare also knew about the customary fees for financial advisors in similar transactions. Furthermore, NCS and Omnicare agreed to and approved Candlewood's fees of $4,190,000 in the merger agreement and company letter. The complaint admits that all concerned parties permitted the transaction to close.

{¶ 26} In addition to the fact that NCS and Omnicare agreed to the merger, the second engagement letter, and the fees, appellant failed to overcome the business-judgment rule. The business-judgment rule "is a rebuttable presumption that directors are better equipped than the courts to make business judgments and that the directors acted without self-dealing or personal interest and exercised reasonable diligence and acted with good faith. A party challeng-

ing a board of directors' decision bears the burden of rebutting the presumption that the decision was a proper exercise of the business judgment of the board." *Gries Sports Ent., Inc. v. Cleveland Browns Football Co.* (1986), 26 Ohio St.3d 15, 20, 26 OBR 12, 496 N.E.2d 959.

{¶ 27} Civ.R. 12(B)(6), Fed.R.Civ.P. 12(b)(6) and Del.Ch.R. 12(b)(6) are textually identical. Not surprisingly, therefore, both Delaware and Ohio courts look to Fed.R. 12(b)(6) in applying the respective state adoptions of the federal rule. *Baker v. Ohio Dept. of Rehab. & Corr.* (2001), 144 Ohio App.3d 740, 749–750, 761 N.E.2d 667 (analyzing Civ.R. 12(B)(6) and its "federal analogue" Fed.R.Civ.P. 12(b)(6)); *Jenkins v. Eberhart* (1991), 71 Ohio App.3d 351, 354–355, 594 N.E.2d 29 (analyzing Civ.R. 12 by analogy to the federal rule); *Brehm v. Eisner* (Del.2000), 746 A.2d 244, 267 ("Chancery Rules 23.1 and 12(b)(6) are predicated on the Federal Rules of Civil Procedure. The federal precedents therefore carry great weight"). *Patents Mgt. Corp. v. O'Connor* (1985), 11 Del.J.Corp.L. 693, 696, 1985 WL 11576 at *1. ("Generally, matters outside the pleadings must be excluded by the [c]ourt in considering a motion to dismiss. Chancery Rule 12(b)(6). Nevertheless, the federal courts, in ruling upon motions to dismiss under the Federal Rule of Civil Procedure 12(b)(6), have taken into account documents, such as proxy statements, where the complaint relies on such documents").

■ {¶ 28} NCS failed to allege facts sufficient to overcome the business-judgment-rule protections. Under Delaware law, directors cannot be accused of a breach of fiduciary duty in the absence of allegations that the business-judgment rule does not protect a board's decision making. Such allegations must rise above the assertion that a corporate board acted against the interests of the corporation or engaged in bad decision making and include, for example, allegations that the board was self-interested or that the board failed to exert any deliberative effort in making its decision. *Brehm* at 264, fn. 66; *Solomon v. Armstrong* (Del.Ch.1999), 747 A.2d 1098, 1111–1112 (the business-judgment rule is a presumption that in making a business decision, the board of directors acted on an informed basis, in good faith and in the honest belief that the action was taken in the best interest of the company).[3]

{¶ 29} NCS failed to plead any facts sufficient to avoid the presumption that the directors acted in the best interest of NCS pursuant to the business-judgment rule. NCS failed to allege that the directors were uninformed, not independent, did not act in good faith, or were grossly negligent.

---

3. Delaware courts routinely dismiss complaints pursuant to Rule 12(b)(6) based on the business-judgment rule. See, e.g., *In re Natl. Auto Credit, Inc. Shareholders Litigation* (Jan. 10, 2003), No. 19028, 2003 WL 139768, *14, 2003 Del.Ch. LEXIS 5, *46 (claim for breach of fiduciary duty dismissed where "[t]he Plaintiffs have set forth nothing but conclusory descriptions of any deficiency in the Board's decision-making process").

{¶ 30} In addition to the merger agreement, additional documentation, and the business-judgment rule, the lower court provides additional guidance and support for its decision in its journal entry. The trial court states that appellant's complaint establishes that the merger agreement was signed by the chairman of NCS, Omnicare was aware of the professional fees, and the agreement was approved by the board.

{¶ 31} The lower court detailed its analysis regarding the motion to dismiss the complaint in its April 16, 2004 journal entry when it stated the following:

> Defendant(s) Candlewood Partners LLC(D1) and Candlewood Partners Inc['s] (D2) Motion to Dismiss the Complaint, filed 07/07/2003, is granted. The Complaint fails to state a claim upon which relief may be granted. Presuming all factual allegations in the complaint are true, there is an agreement to compensate Candlewood for services.
>
> *Attached to Plaintiff's Complaint is an agreement dated December 17, 2002. The agreement is signed by the Chairman of NCS Healthcare, Inc., Jon H. Outcalt. The agreement clearly states the term of compensation to Candlewood. Plaintiff's Complaint further sets forth that NCS sent Omnicare a 'Company Letter' stating Candlewood Partners were paid professional fees amounting to $4,190,000. Plaintiff's Complaint states 'The NCS board unanimously approved the Omnicare merger agreement.'*
>
> *Plaintiff's Complaint alone establishes the Merger Agreement was signed by the Chairman of NCS, Omnicare was aware of the professional fees, and the agreement was approved by the board.* Court cost assessed to the Plaintiff(s).

(Emphasis added.)

{¶ 32} The record, the merger agreement, and the company letter all demonstrate that Omnicare knew and agreed to Candlewood's fees prior to the merger. To allow companies to disregard prior agreed-upon merger terms, professional fees, and other obligations after a merger has concluded would set a distorted precedent.

{¶ 33} Omnicare negotiated and accepted Candlewood's professional fees when it agreed to the terms in the merger agreement. We find the lower court's actions to be proper. We find that consideration was given in the case at bar; furthermore, we find that NCS's actions do not constitute corporate waste or a breach of fiduciary duty.

{¶ 34} Appellant's assignment of error is overruled.

Judgment affirmed.

BLACKMON, A.J., concurs.

COONEY, J., concurs in judgment only.