DECISION.
{¶ 1} This case concerns a lender, a guarantor, and the non-debtor wife of the guarantor. The relevant inquiry is whether the non-debtor's complaint alleged facts sufficient to support her claim for intentional infliction of emotional distress against the lender based on the lender's alleged misconduct in attempting to secure further assurances and collateral from the guarantor.
 {¶ 2} Defendant-appellee Fifth Third Bank loaned money to a company known as CCL Harrison, LLC ("CCL"). Plaintiff-appellant Dona Coors's husband, Joseph C. Coors, guaranteed the loan. CCL defaulted, and Fifth Third demanded payment from Joseph. Joseph failed to pay. Fifth Third sued, and the trial court awarded a judgment against Joseph. Dona's complaint alleged that Fifth Third and its attorneys, defendant-appellees Alan J. Statman and Brian T. Giles, had intentionally inflicted emotional distress upon her while attempting to pressure Joseph to sign a forbearance agreement. The trial court dismissed the claim under Civ.R. 12(B)(6) for failing to state a redressable claim. Dona appeals the trial court's judgment dismissing her complaint. Because her complaint failed to state a claim for which relief could be granted, we affirm the trial court's judgment.
 I. The Loan Agreement {¶ 3} Real estate limited-liability company CCL borrowed money from Fifth Third Bank. Joseph, William Coors (Joseph's father), and David Luecke cosigned and guaranteed the note. Dona was not obligated under the note. Nor was she indebted to Fifth Third in any fashion.
 {¶ 4} In February 2005, CCL defaulted on the note. The amount due had exceeded $1.6 million. Joseph, William Coors, and David Luecke each signed a cognovit agreement acknowledging the validity of Fifth Third's demand for repayment. Fifth Third advised the three guarantors that, unless each of them signed a forbearance agreement, it would foreclose on the note, seek a judgment, and collect the amount due. Coors and Luecke signed the forbearance agreement — Joseph did not.
 {¶ 5} Had Joseph signed the forbearance agreement, Dona would have had to transfer to Fifth Third her twenty-percent share in Harrison Avenue Development, LLC, ("Harrison") in partial satisfaction of Joseph's obligation to Fifth Third. The Harrison shares had previously been transferred from Joseph to Dona. Upon learning that the shares had been transferred, Giles emailed Joseph, alleging that the transfer was void as a matter of law because it had occurred while Joseph was insolvent.
 {¶ 6} In March 2005, the trial court awarded Fifth Third a judgment against Joseph. At Fifth Third's request, the trial court also issued a writ of execution against Joseph, directing the Hamilton County Sheriff to inventory and sell Joseph's assets located at his residence. Joseph and Dona lived in the same home. The order authorized the sheriff to employ a locksmith to gain entrance, if necessary. Notably, the execution order prepared by Fifth Third's counsel failed to disclose that the site was a jointly owned private residence — and the praecipe authorizing the execution described the site as the "judgment debtors' place of business." The next day the order was executed.
 {¶ 7} Dona's complaint alleged that Fifth Third "caused a * * * sheriff's deputy to come to [her] home, and to, on their behalf, make a forced entry to the premises with a locksmith, while [she] was nursing her baby." Once the lock was picked, Dona called her attorney and, under his advisement, told the sheriff's deputy that they "did not have her permission to enter the home," but that she "would not get in the way or interfere." Dona further alleged that "[a]t that point, the [s]heriff's deputy elected to withdraw from the home, although he advised [Dona] that she could be subjected to being brought before the Court in handcuffs for her refusal of permission." Consequently, Fifth Third initiated contempt proceedings against Dona for failing to comply with the trial court's order.
 {¶ 8} Dona's complaint alleged that Fifth Third and its agents had engaged in a "systematic and calculated course of conduct designed or intended to cause [her] to, against her will, turn over to Fifth Third Bank substantial amounts of her property, to which Fifth Third Bank is not entitled, in partial satisfaction of the [j]udgment against [Joseph]." The complaint further alleged that Fifth Third, by acting upon the order and by pursuing contempt charges against her, had engaged in "extreme and outrageous conduct" by which it had "maliciously, intentionally, or recklessly caused, and continue[d] to cause, serious emotional distress." As a result of the alleged "extreme and outrageous" conduct, Dona allegedly suffered "severe emotional trauma, stress, panic, anguish, and sleeplessness" requiring professional counseling.
 {¶ 9} In response to Dona's claims, Fifth Third moved to dismiss the complaint. Fifth Third's dismissal motion relied solely upon the facts alleged in the complaint, coupled with the supporting documents to which the complaint referred. Statman and Giles separately moved to dismiss, but their motion relied, in part, on evidence beyond the complaint. In replying to the dismissal motions, Dona submitted a supplemental statement of facts that had been verified by the affidavits of Dona, Joseph, and Michael Helbling.
 {¶ 10} We note that the mere submission of evidentiary material in support of a failure-to-state-a-claim dismissal motion does not require a court to convert the motion into one for summary judgment. A trial court has the power to exclude the extraneous evidence, and if it does, the motion must be disposed of on the basis of the complaint alone.[1] It is within the trial court's discretion to determine whether to convert a Civ.R. 12(B)(6) motion to a summary-judgment motion, but in most instances a court should exclude matters outside the pleadings.[2]
 {¶ 11} The staff notes to Civ.R. 12(B) suggest that, when ruling on Civ.R. 12(B)(6) motions, trial courts should exclude matters outside the pleadings, thereby requiring a party to move formally for summary judgment under Civ.R. 56 in order to present matters extraneous to the pleadings.[3] Accordingly, when resolving a Civ.R. 12(B)(6) dismissal motion, a court should not rely on evidence outside the complaint. But the court may consider materials that are referred to or incorporated in the complaint.[4]
 {¶ 12} An order granting a Civ.R. 12(B)(6) dismissal motion is subject to de novo review.[5] Such motions are procedural in nature and test the sufficiency of the complaint.[6] When ruling on a failure-to-state-a-claim motion, courts consider all factual allegations in the complaint to be true and make all reasonable inferences in favor of the nonmoving party.[7] But factual allegations must be distinguished from unsupported conclusions. Unsupported conclusions are not deemed true, nor are they sufficient to withstand a dismissal motion.[8]
 {¶ 13} When ruling upon the dismissal motions in this case, the trial court relied solely upon the face of the complaint, excluding from its review all extraneous evidence not referred to or incorporated in the complaint. We likewise limit our appellate review to the face of the complaint, combined with any referred or incorporated materials. Before this court may uphold the dismissal of this complaint, it must appear beyond doubt that the plaintiff can prove no set of facts warranting a recovery.[9]
 II. Intentional Infliction of Emotional Distress — An Exacting Standard {¶ 14} Ohio courts recognize the tort of intentional infliction of emotional distress ("IIED"), but an IIED recovery is reserved for cases involving serious emotional distress.[10] To sustain an IIED claim, the plaintiff must show that (1) the defendant intended to cause serious emotional distress; (2) the defendant's conduct was outrageous and extreme; and (3) the defendant's conduct was the proximate cause of plaintiff's serious emotional injury.[11]
 {¶ 15} In Ohio, the requisite extreme and outrageous conduct must involve the most serious behavior: "Liability has been found only where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community. Generally, the case is one in which the recitation of the facts to an average member of the community would arouse his resentment against the actor, and lead him to exclaim, `Outrageous!'."[12] But IIED liability does not arise from mere insults, indignities, threats, annoyances, petty oppressions, or other trivialities.[13]
 {¶ 16} Under this exacting standard, we hold, considering all factual allegations of the complaint to be true and making all reasonable inferences in favor of the nonmoving party, that Dona's complaint failed to state a claim for which relief could be granted. Her complaint was rife with conclusory allegations of "extreme and outrageous" conduct on the part of Fifth Third, Statman, and Giles (collectively "appellees"). But the complaint was devoid of factual allegations supporting such conclusions.
 {¶ 17} Paragraph seven of the complaint alleged that appellees "pressured" Joseph to sign a forbearance agreement by threatening, and then bringing, a suit to enforce the guaranty. That paragraph also alleged that appellees, through various third parties, informed Joseph and Dona of their intent to enter the couple's home and cart away its contents. Dona also bemoaned Fifth Third's initiation of contempt proceedings against her for denying permission to enter her home. Paragraph sixteen of the complaint conclusorily alleged that the facts constituted extreme and outrageous conduct, and that appellees had maliciously, intentionally, or recklessly caused, and continued to cause, serious emotional damages to her.
 {¶ 18} Lenders may sue to obtain a judgment on a defaulted loan. Once Fifth Third's claims had been reduced to judgment, appellees took steps to pursue their post-judgment rights and remedies allowed under the credit facility, guarantee contract, Ohio law, and the trial court's orders. Any intrusion into Dona's home was under court order and was minimally invasive. Once Dona told the sheriff that he was not welcome, the sheriff decided to withdraw from the premises, while also warning her that she could be subject to "being brought before the court in handcuffs" for refusing his entry. There was no breach of the peace. Dona's complaint characterized these actions as Fifth Third's attempt to pressure Joseph into signing the forbearance agreement, thereby requiring Dona to convey her Harrison shares.
 {¶ 19} Although Fifth Third's methods in attempting to collect on the debt owed by Joseph may have been questionable, especially the threats, and most especially the execution at the home — where Fifth Third's counsel was told, by letter, that very little valuable personal property would be found — the conduct as alleged in Dona's complaint was not the type of extreme or outrageous conduct required to sustain an IIED claim. Mere insults, indignities, threats, annoyances, petty oppressions, or other trivialities would not support her IIED claim.
 {¶ 20} After considering the factual allegations in the complaint, and assuming each allegation to be true, we hold that, as a matter of law, the facts set forth in the complaint did not constitute extreme and outrageous behavior, and did not state a claim for which relief could be granted. Accordingly, the trial court's judgment dismissing Dona's complaint is affirmed.
Judgment affirmed.
Hildebrandt, P.J., and Doan, J., concur.
[1] See Kreuzer v. Legler (Dec. 19, 1986), 2nd Dist. No. 9972.
[2] See Eulrich v. Weaver Bros. Inc., 165 Ohio App.3d 313,2005-Ohio-5891, 846 N.E.2d 542, at ¶ 11.
[3] See Civ.R. 12(B), staff notes.
[4] See, e.g., State ex rel. Crabree v. Franklin Cty. Bd. ofHealth (1997), 77 Ohio St.3d 247, 249, fn.1; White v. Rock,
9th Dist. No. 22239, 2005-Ohio-1127.
[5] See Battersby v. Avatar, Inc., 157 Ohio App.3d 648,2004-Ohio-3324, 813 N.E.2d 46, at ¶ 5.
[6] See State ex rel. Hanson v. Guernsey Cty. Bd. of Commrs.
(1992), 65 Ohio St.3d 545, 547, 605 N.E.2d 378.
[7] See Mitchell v. Lawson Milk Co. (1989),40 Ohio St.3d 190, 192, 532 N.E.2d 753.
[8] See State ex rel. Hickman v. Capots (1989),45 Ohio St.3d 324, 544 N.E.2d 639; see, also, Mitchell, supra, at 193.
[9] See O'Brien v. Univ. Community Tenant's Union (1975),42 Ohio St.2d 242, 327 N.E.2d 753, syllabus.
[10] See Yeager v. Local Union 20 (1983), 6 Ohio St.3d 369,373, 453 N.E.2d 666.
[11] Meyers v. Hot Bagels Factory, Inc. (1999),131 Ohio App.3d 82, 93, 721 N.E.2d 1068. See, also, Phung v. WasteManagement Inc., 71 Ohio St.3d 408, 410, 1994-Ohio-389,644 N.E.2d 286; see, generally, Foster v. McDevitt (1986),31 Ohio App.3d 237, 239, 511 N.E.2d 403.
[12] See Foster, supra.
[13] See id. at 240, 511 N.E.2d at 407.