[Cite as *Richardson v. Clinical Computing P.L.C.*, 2016-Ohio-8065.]

# IN THE COURT OF APPEALS

# FIRST APPELLATE DISTRICT OF OHIO

# HAMILTON COUNTY, OHIO

| | | |
|---|---|---|
| JACK N. RICHARDSON, | : | APPEAL NO. C-150594 |
| | | TRIAL NO. A-0700612 |
| Plaintiff-Appellant, | : | |
| vs. | : | *O P I N I O N.* |
| CLINCIAL COMPUTING PLC, | : | |
| and | : | |
| CLINICAL COMPUTING, INC., | : | |
| Defendants-Appellants, | : | |
| and | : | |
| CLINICAL COMPUTING, U.K. Ltd., | : | |
| Defendant. | : | |

Civil Appeal From: Hamilton County Court of Common Pleas

Judgment Appealed From Is: Affirmed in Part, Reversed in Part, and Cause Remanded

Date of Judgment Entry on Appeal: December 7, 2016

*Christopher Ragonesi,* for Plaintiff-Appellant,

*Taft, Stettinius & Hollister, LLP,* and *Doreen Canton*, for Defendants-Appellees.

**STAUTBERG, Judge.**

{¶1} Plaintiff-appellant Jack N. Richardson appeals the judgment of the trial court granting the defendants' motion to dismiss his complaint as to Clinical Computing PLC and Clinical Computing, Inc. Richardson, in his sole assignment of error, argues that the trial court erred in granting the motion to dismiss because the defendants were properly served, and because his complaint stated claims upon which relief may be granted. Richardson does not challenge the trial court's decision to dismiss Clinical Computing, U.K. Ltd., from the action. For the reasons below, we affirm in part, reverse in part, and remand the cause.

### Facts

{¶2} This action stems from an employment dispute between Richardson and the defendants. Richardson, who was born in 1949, alleges in his complaint that he began working for the defendants in 1995, as a senior vice president of sales. Richardson further alleges that he was promoted to various positions of greater responsibility, eventually becoming group chief executive. Richardson further alleges that the chief executive position was governed in part by a service contract dated January 1, 1998. Richardson was terminated from his position on February 28, 2006, when he was 56 years old.

{¶3} On January 22, 2007, Richardson filed a complaint and jury demand against the defendants for age discrimination, breach of Ohio public policy, breach of contract, breach of the covenant of good faith and fair dealing, promissory estoppel, and punitive damages. On the face of the complaint, Richardson listed the defendants and included addresses for Clinical Computing PLC and Clinical Computing, U.K. Ltd., in the United Kingdom, and an address for Clinical

Computing, Inc., in Cincinnati. In his praecipe to the clerk, Richardson requested that the clerk "serve Defendants, via certified mail, through their statutory agent, whose name and address are as follows: Michael J. Zavatsky[,] 425 Walnut Street, Suite 1800[,] Cincinnati, OH 45202[.]" However, on January 24, 2007, the clerk sent the summons and complaint to Clinical Computing PLC and Clinical Computing, U.K. Ltd., via registered mail to their United Kingdom addresses. The clerk did send a summons and complaint to Clinical Computing, Inc., via certified mail to its statutory agent in Cincinnati, Ohio.

{¶4} On February 26, 2007, pursuant to Civ.R. 12, the defendants filed a motion to dismiss Richardson's complaint. In the defendants' motion to dismiss, they argued that (1) Richardson did not serve Clinical Computing PLC and Clinical Computing, U.K. Ltd., pursuant to the Hague Convention on the Service Abroad of Judicial and Extrajudicial Documents in Civil and Commercial Matters ("Hague Service Convention"), (2) the court lacked personal jurisdiction over Clinical Computing, U.K. Ltd., (3) Clinical Computing, U.K. Ltd., and Clinical Computing, Inc., were not proper defendants because the companies were not Richardson's employer or a party to his service agreement, and (4) Richardson's breach of public policy, breach of the covenant of good faith and fair dealing, and promissory estoppel claims should be dismissed for failure to state a claim upon which relief could be granted. The defendants attached to their motion to dismiss an affidavit from the chief executive of Clinical Computing PLC and the service agreement, dated January 1, 1998, between Richardson and Clinical Computing PLC.

{¶5} On March 28, 2007, Richardson filed a memorandum in opposition to the defendants' motion to dismiss with respect to Clinical Computing PLC and Clinical Computing, Inc. He did not oppose Clinical Computing, U.K. Ltd.'s,

dismissal. Richardson argued that Clinical Computing PLC was properly served through its domestic subsidiary, Clinical Computing, Inc. Richardson also argues that Clinical Computing, Inc., was a proper defendant as he was employed by Clinical Computing, Inc., through 2006. Richardson also contended that he stated proper claims for breach of public policy, breach of the covenant of good faith and fair dealing, and promissory estoppel, because the service agreement did not preclude those claims. Richardson attached an affidavit from his attorney that expressed the need for further discovery to support his memorandum in opposition, and also attached his 2006 W-2 from Clinical Computing, Inc., and a direct deposit receipt from Clinical Computing, Inc.

{¶6} On April 5, 2007, the defendants filed a reply memorandum in support of their motion to dismiss. Again, the defendants argued that Richardson improperly served Clinical Computing PLC. They further argued that the trial court need only review the service agreement, and should ignore Richardson's attached documents that were outside of the pleadings. The defendants emphasized that the service agreement precluded Richardson's claims for breach of contract, breach of the covenant of good faith and fair dealing, breach of public policy, and promissory estoppel.

{¶7} On December 28, 2007, the registered mail receipts for the service of the summons and complaint on Clinical Computing PLC and Clinical Computing, U.K. Ltd., were entered on the record.

{¶8} Finally, on September 9, 2015, the trial court ruled in favor of the defendants on their motion to dismiss. The trial court dismissed the complaint against Clinical Computing, U.K. Ltd., as Richardson did not contest the dismissal of that defendant. The trial court found that Richardson had not properly served

Clinical Computing PLC pursuant to the Hague Service Convention, and therefore granted the motion to dismiss on that ground. As to Clinical Computing, Inc., the trial court dismissed Richardson's complaint for failure to state a claim upon which relief could be granted.

### Assignment of Error

{¶9} Richardson timely appealed, and asserts in his sole assignment of error that the trial court erred in granting Clinical Computing PLC and Clinical Computing, Inc.'s, motion to dismiss. The trial court granted the defendants' motion to dismiss on separate grounds, and we therefore address each matter separately.

### A. Service of Process Pursuant to the Hague Service Convention

{¶10} In his first issue presented for review, Richardson contends that where Clinical Computing PLC received service in a manner not objected to by the United Kingdom under the Hague Service Convention or, alternatively, through its wholly-owned domestic subsidiary Clinical Computing, Inc., service of process is effective upon Clinical Computing PLC. We agree that Clinical Computing PLC was properly served pursuant to the Hague Service Convention.

### 1. The Hague Service Convention

{¶11} Service of process on a party in a foreign country, such as in this case, is governed by Civ.R. 4.5, which provides in part:

> If the foreign country is a signatory to the Hague Convention on the Service Abroad of Judicial and Extrajudicial Documents in Civil or Commercial Matters, service shall be pursuant to a method allowed by the Articles of that Convention, including any method allowed by Article 8 or Article 10 to which the foreign country has not objected in accordance with Article 21.

{¶12} Formulated in 1964 by the Tenth Session of the Hague Conference of Private International Law, the Hague Convention on the Service Abroad of Judicial and Extrajudicial Documents in Civil or Commercial Matters ("Hague Service Convention") is a multilateral international treaty which entered into force in the United States, and likewise in the United Kingdom, on February 10, 1969. *See* 20 U.S.T. 361; T.I.A.S. No. 6638. The Hague Service Convention was intended to provide a simpler way to serve process abroad, to assure that defendants sued in foreign jurisdictions would receive actual and timely notice of suit, and to facilitate proof of service abroad. *Volkswagenwerk Aktiengesellschaft v. Schlunk*, 486 U.S. 694, 698, 108 S.Ct. 2104, 100 L.Ed.2d 722, (1988) (quoting the Preamble to the 1965 Hague Service Convention).

{¶13} Defining the scope of the Hague Service Convention, Article 1 requires the Hague Service Convention to apply in all cases, in civil or commercial matters, where there is occasion to transmit a judicial or extrajudicial document for service abroad. *Id.* at 699; 20 U.S.T. at 362. Article 2 presents the primary innovation of the Hague Service Convention, requiring each country to establish a central authority to receive requests for service of documents from other countries. *Schlunk* at 699-700.

{¶14} While a central authority is intended to be the main channel for transmitting service abroad, it is neither the mandated nor the exclusive channel under the Hague Service Convention. The Hague Service Convention includes several alternative channels of transmission of judicial documents. Under Article 21 of the Hague Service Convention, each signatory state may ratify the provisions subject to conditions or objections. *Bankston v. Toyota Motor Corp.*, 889 F.2d 172, 173 (8th Cir.1989).

{¶15} Whether service of process was perfected upon Clinical Computing PLC in this instance depends on the interpretation of Article 10 of the Hague Service Convention, which states:

Provided the State of destination does not object, the present Convention shall not interfere with –

(a)     the freedom to send judicial documents, by postal channels, directly to persons abroad,

(b)     the freedom of judicial officers, officials or other competent persons of the State of origin to effect service of judicial documents directly through the judicial officers, officials or other competent persons of the State of destination,

(c)     the freedom of any person interested in a judicial proceeding to effect service of judicial documents directly through the judicial officers, officials or other competent persons of the State of destination.

In Article 10, signatories are reminded of their ability to object to provisions of the treaty.  Accordingly, several countries have explicitly objected to part or all of Article 10.  The United Kingdom has not objected to Article 10(a).

{¶16} The issue in this case concerning service of process abroad relates to the use and meaning of the word "send" in Article 10(a), as compared to the terms "serve" and "service" as used in other sections of Article 10 and other articles throughout the treaty.  Specifically, we must determine whether Article 10(a) permits service of process to be accomplished on foreign defendants directly through postal channels, or whether service of process is outside of the scope of that provision.

7

## 2. Article 10 – A Split in Authority

{¶17} Two distinct interpretations of Article 10 have arisen among those courts that have addressed the issue of service abroad by mail. *Bankston,* 889 F.2d at 173.

{¶18} The Fifth and Eighth Circuit Courts of Appeals have determined that Article 10(a) does not permit service by mail. *See, e.g., id.* at 174; *Nuovo Pignone, Spa v. Storman Asia M/V*, 310 F.3d 374, 384 (5th Cir.2002). These courts look to the literal language used in the treaty, and find that the language used must be regarded as conclusive, absent a clearly expressed intention to the contrary. *Bankston* at 174, citing *Consumer Prod. Safety Comm. v. GTE Sylvania, Inc.*, 447 U.S. 102, 108, 100 S.Ct. 2051, 64 L.Ed.2d 766 (1980). Thus, the Fifth and Eighth Circuits have presumed that different meanings were intended for the terms "send" and "service," because the drafters purposefully used the word "service" throughout the Hague Service Convention while confining the word "send" to Article 10(a). *Nuovo Pignone* at 384.

{¶19} The Second and Ninth Circuit Courts of Appeals have held that the word "send" in Article 10(a) was intended to mean "service," thus permitting the use of postal channels as a means of proper service of process under the Hague Service Convention. *See Ackermann v. Levine*, 788 F.2d 830, 838-839 (2d Cir.1986); *Brockmeyer v. May*, 383 F.3d 798, 802 (9th Cir.2004). Courts within these circuits have recognized that Article 10(a) purports to deal with the *subject* of service abroad of judicial documents. (Emphasis added.) Thus, the reference to "the freedom to send judicial documents by postal channels, directly to persons abroad" in Article 10(a) "would be superfluous unless it was related to the sending of such documents

for the purpose of service." *Shoei Kako Co. v. Superior Court*, 33 Cal.App.3d 808, 821, 109 Cal.Rptr. 402 (1973).

{¶20} Although there is some merit to the proposed distinction between the terms "send" and "service," the distinction is outweighed by the overriding purpose of the Hague Service Convention to develop a comprehensive system to effectuate proper service of process in other countries. *Id.* The structure of the Hague Service Convention and the placement of subdivision (a) within the Article 10 list of alternate methods of service, to which contracting states were specifically authorized to object, suggest that the word "send" was used as a synonym for "serve." *R. Griggs Group v. Filanto Spa*, 920 F.Supp. 1100, 1104 (D.Nev.1996); *see also EOI Corp. v. Medical Mktg.*, 172 F.R.D. 133, 137 (D.N.J.1997) (subdivision (a) would be out of place in Article 10, and in the entire Hague Service Convention, if it did not relate to the "sending" of judicial documents for the purpose of "service process").

{¶21} The Sixth Circuit Court of Appeals has not yet addressed this issue, and federal district courts within the circuit have come to different conclusions regarding whether the "freedom to send judicial documents" includes "service of process" by registered mail. *Zobel v. Contech Ents.,* S.D.Ohio No. 2:14-cv-2721, 2016 U.S. Dist. LEXIS 36451, *15 (Mar. 21, 2016). One of the first Ohio federal court decisions to address the Article 10 controversy involved an Ohio company sending documents for the purpose of service to a company located in West Germany. *Lyman Steel Corp. v. Ferrostaal Metals Corp.*, 747 F.Supp. 389, 398 (N.D.Ohio 1990). The court determined that the sending of the summons and complaint by registered mail was insufficient service of process. *Id.* at 400-401. However, West Germany, in ratifying the treaty, specifically objected to the provisions of Article 10, as permitted by the Hague Service Convention. The court in *Zobel*, in contrast,

found that the language of Article 10(a) applied to service of process on a Canadian citizen. *Zobel* at *16, citing *Sibley v. Alcan, Inc.*, 400 F.Supp.2d 1051 (N.D.Ohio 2005).

{¶22} The only case out of this court addressing the issue is *Collins v. Collins*, 165 Ohio App.3d 71, 2006-Ohio-181, 844 N.E.2d 910 (1st Dist.). There, this court found that Article 10(a) did not permit service of process via registered mail upon a German citizen. As noted, however, Germany had specifically objected to Article 10(a). Because the United Kingdom, by contrast, has not objected to Article 10(a), *Collins* is not applicable.

{¶23} We adopt the majority view and hold that Article 10(a) allows service of process to be accomplished directly through postal channels to parties in countries that do not object to the provision. *See, e.g., TracFone Wireless, Inc. v. Hernandez*, S.D.Fla. No. 15-23032-CIV-MARTINEZ GOODMAN, 2016 U.S. Dist. LEXIS 104767, *4-6 (July 21, 2016) (the court holding that Article 10(a) of the Hague Service Convention allows for service abroad by postal channels so long as the destination country does not object to such service); *Super 8 Worldwide, Inc. v. 3082649 Nova Scotia, Ltd.*, D.N.J. No. 14-cv-6275 (KM)(JBC), 2016 U.S. Dist. LEXIS 37150, *8 (Mar. 22, 2016); *Amirault v. Ferrari*, N.D.Ohio No. 1:15CV1621, 2015 U.S. Dist. LEXIS 151049, *3-5 (Nov. 6, 2015) (Article 10(a) of the Hague Service Convention allows service of process via registered mail where the foreign country has not objected to this manner of service); *Lewis v. Madej*, S.D.N.Y. No. 15CV2676 (DLC), 2015 U.S. Dist. LEXIS 144384, *28-29, fn. 4 (Oct. 23, 2015); *SHLD, LLC v. Hall*, S.D.N.Y. No. 15CV6225 (LLS), 2016 U.S. Dist. LEXIS 19368, *9 (Feb. 17, 2016).

{¶24} As Clinical Computing PLC is located in the United Kingdom, that is the state of destination. The United Kingdom has not objected to Article 10(a). The

record reflects that the summons and complaint was sent by registered mail to Clinical Computing PLC. These facts indicate that service of process was effectuated on Clinical Computing PLC, because the clerk of courts properly served the party in accordance with Article 10(a) of the Hague Service Convention.

### B. Motion to Dismiss as to Clinical Computing, Inc.

{¶25} Richardson further argues that the trial court erred in granting the defendants' motion to dismiss as to Clinical Computing, Inc. Richardson contends that "[w]here the allegations of Plaintiff's Complaint are taken as true, and any reasonable inferences drawn from those allegations are construed in Plaintiff's favor, it is not 'beyond doubt' Plaintiff can prove no set of facts in support of his claims against Defendants." We will address the counts in his complaint out of order.

### 1. Standard of Review

{¶26} A motion to dismiss under Civ.R. 12(B)(6) tests the sufficiency of the complaint. *Fulton RR. Co. v. City of Cincinnati*, 1st Dist. Hamilton No. C-150373, 2016-Ohio-3520, ¶ 6. Under Civ.R. 12(B), a complaint may be dismissed only "when it appears beyond doubt that the plaintiff can prove no set of facts that would entitle him to relief." *Id.,* citing *O'Brien v. Univ. Community Tenants Union, Inc.*, 42 Ohio St.2d 242, 327 N.E.2d 753 (1975), syllabus. In reviewing Richardson's complaint, we accept all factual allegations in the complaint as true, and draw all reasonable inferences in favor of him as the nonmoving party. *Fulton* at ¶ 65, citing *Mitchell v. Lawson Milk Co.*, 40 Ohio St.3d 190, 192, 532 N.E.2d 753 (1988). We review the granting of a Civ.R. 12(B)(6) motion to dismiss de novo. *Perrysburg Twp. v. Rossford*, 103 Ohio St.3d 79, 2004-Ohio-4362, 814 N.E.2d 44, ¶ 5.

## 2. Richardson's Complaint and the Service Agreement

{¶27} The trial court dismissed Richardson's claims against Clinical Computing, Inc., for breach of contract, breach of public policy, breach of the covenant of good faith and fair dealing, and promissory estoppel because it determined that Clinical Computing, Inc., was not Richardson's employer. Because Clinical Computing, Inc.'s, status as Richardson's employer is in dispute and is relevant to our analysis of his claims, we determine this matter first.

{¶28} Richardson argues that the trial court did not accept his factual allegations as true. In support, Richardson contends that the trial court failed to take into consideration the W-2 issued by Clinical Computing, Inc., and the direct deposit receipt that was attached to his memorandum in opposition to defendants' motion to dismiss, as well as his factual allegation that his employment was governed only "in part" by the defendants' attached service agreement. Richardson also asserts that the trial court considered evidence outside of the pleadings.

{¶29} In Richardson's complaint, he had referenced a "contract," dated January 1, 1998, that "in part" governed his employment with the defendants. Richardson had apparently intended to attach the document as "Exhibit A," but had failed to do so.

{¶30} Civ.R. 10(C) provides that "[s]tatements in a pleading may be adopted by reference in a different part of the same pleading or in another pleading or in any motion." Civ.R. 10(D)(1), however, provides that a copy of a written instrument must be attached to the pleading when any claim is founded on that document. If the document is not attached, then the reason for the omission must be stated in the pleading. Civ.R. 10(D)(1).

{¶31} Some of Richardson's claims were founded on the contract, but because he failed to attach the document and provide reasoning for not attaching the document, Richardson did not comply with Civ.R. 10(D)(1). However, because the defendants did not file a motion for a more definite statement under Civ.R. 12(E), they have forfeited the argument as a basis for the dismissal of Richardson's complaint. *See, e.g., Sylvester Summers, Jr. Co., L.P.A. v. City of E. Cleveland,* 8th Dist. Cuyahoga No. 98227, 2013-Ohio-1339, ¶ 31.

{¶32} Rather, the defendants, in their motion to dismiss, attached an affidavit from their current chief executive authenticating an attached service agreement between Clinical Computing PLC and Richardson, dated January 1, 1998. The trial court relied on that service agreement between Clinical Computing PLC and Richardson to conclude that Clinical Computing, Inc., was not Richardson's employer.

{¶33} Generally, in deciding a Civ.R. 12(B)(6) motion to dismiss, the trial court cannot consider matters outside of the pleadings. Civ.R. 12(B); *see Brown v. Cincinnati Public Schools,* 1st Dist. Hamilton No. C-150345, 2016 Ohio App. LEXIS 641, *2 (Feb. 26, 2016); *Coors v. Fifth Third Bank,* 1st Dist. Hamilton No. C-050927, 2006-Ohio-4505, ¶ 11; EMC *Mtge. Corp. v. Jenkins,* 164 Ohio App.3d 240, 2005-Ohio-5799, 841 N.E.2d 855, ¶ 12 (10th Dist.) (by considering matters outside of the pleadings, the trial court converted the appellant's motion to dismiss into a motion for summary judgment). However, documents that are attached to or incorporated into the complaint may be considered. *See NCS Healthcare, Inc. v. Candlewood Partners, L.L.C.,* 160 Ohio App.3d 421, 2005-Ohio-1669, 827 N.E.2d 797, ¶ 20 (8th Dist.), citing *State ex rel. Crabtree v. Franklin Cty. Bd. of Health,* 77 Ohio St.3d 247, 249, 673 N.E.2d 1281 (1997); *State ex rel. Edwards v. Toledo City School Dist. Bd. of*

*Edn.,* 72 Ohio St.3d 106, 109, 647 N.E.2d 799 (1995) (Civ.R. 12(B)(6) dismissal is proper where the claim for mandamus relief arises from a contract which is incorporated in and attached to the complaint, and the contract indicates that the relief requested is not warranted).

{¶34} Here, Richardson does not deny that the contract that he referenced in his complaint is the same service agreement that the defendants attached to their motion to dismiss. Therefore, we hold that the service agreement attached to the defendants' motion to dismiss is the "contract" that is referenced in Richardson's complaint, and therefore is proper for us to review pursuant to Civ.R. 10(C). *See Corporex Dev. & Constr. Mgmt. v. Shook, Inc.,* 10th Dist. Franklin No. 03AP-269, 2004-Ohio-1408, ¶ 25, *rev'd on other grounds*, 106 Ohio St.3d 412, 2005-Ohio-5409, 835 N.E.2d 701. However, the W-2 and the direct deposit receipt that Richardson references in his memorandum in opposition are outside of the pleadings, because Richardson did not incorporate or reference them in his complaint. Therefore, we will not consider the W-2 or the direct deposit receipt in our analysis.

{¶35} After reviewing the service agreement, we find that Clinical Computing PLC employed Richardson, Clinical Computing, Inc., was a member of the "Group" to be served as set forth in the service agreement, and the service agreement solely governed Richardson's employment.

{¶36} The service agreement defined the parties to the agreement. Clinical Computing PLC was defined as "the Company," and Richardson as "the Executive." The service agreement, in its operative provisions, defined "Group" as "[t]he Company; any holding company of the Company; any subsidiaries of the Company or its holding company; and any associated company of any of them."

{¶37} Richardson and the defendants agree that Clinical Computing, Inc., was a wholly-owned subsidiary of Clinical Computing PLC. The language of the service agreement indicates that Richardson was to "devote the whole of his time, attention to the business and affairs of the Group, * * * and shall not take on or be involved in any executive activity outside the Company or any non-executive activity which could interfere with the performance duties of the Appointment." Moreover, the service agreement is clear about the scope of Richardson's employment; "This agreement shall take effect as from the Commencement Date[, January 1, 1998], from which date all other agreements or arrangements, whether written or oral, expressed or implied, between the Executive and any member of the Group relating to his services or employment are cancelled."

{¶38} Although we accept all factual allegations of the complaint as true, " 'unsupported conclusions of a complaint are not considered admitted and are not sufficient to withstand a motion to dismiss.' " *NCS Healthcare, Inc.*, 160 Ohio App.3d 421, 2005-Ohio-1669, 827 N.E.2d 797, ¶ 27, citing *State ex rel. Hickman v. Capots*, 45 Ohio St.3d 324, 544 N.E.2d 726 (1989). Richardson's conclusory allegation that he was employed by Clinical Computing, Inc., is not supported by the record.

### 3. Counts Against Clinical Computing, Inc.

<u>Breach of Contract and Breach of the Covenant of Good Faith and Fair Dealing</u>

{¶39} In Counts III and IV of his complaint, Richardson alleged breach of contract and breach of the covenant of good faith and fair dealing. Because a claim for a breach of the covenant of good faith and fair dealing is not a separate action from a breach of contract claim, we address those counts together. *Great Water Capital Partners, LLC v. Down-Lite Internatl., Inc.*, 1st Dist. Hamilton Nos. C-150015 and C-150023, 2015-Ohio-4877, ¶ 14.

{¶40} To prevail on a breach of contract claim against Clinical Computing, Inc., Richardson must demonstrate by a preponderance of the evidence that (1) the parties had reached a valid and binding agreement, (2) the defendant breached the terms of that agreement, and (3) he suffered damages as a result of the breach of contract. *LaWarre v. Fifth Third Secs., Inc.*, 1st Dist. Hamilton No. C-110302, 2012-Ohio-4016, ¶ 30. "Only a party to a contract or an intended third-party beneficiary of a contract may bring an action on a contract in Ohio." *Thornton v. Windsor House, Inc.*, 57 Ohio St.3d 158, 161, 566 N.E.2d 1220 (1991).

{¶41} In his breach of contract claim, Richardson contends that the "Defendants employed [him] pursuant to an implied and/or expressed contract." However, the language of the service agreement "cancelled" all other agreements or arrangements with members of the "Group" and governed all possible services rendered by Richardson to any member of the "Group." Furthermore, the service agreement stated that the only parties were Clinical Computing PLC and Richardson. Therefore, because Clinical Computing, Inc., is a member of the "Group" and is not a party to the service agreement, Richardson's breach of contract claim fails.

{¶42} Moreover, because a contractual relationship is needed to bring an action for a breach of the covenant of good faith and fair dealing, and there was not a contract between Richardson and Clinical Computing, Inc., Richardson's claim for a breach of the covenant of good faith and fair dealing against Clinical Computing, Inc., also fails. *See Great Water* at ¶ 14.

### Breach of Ohio Public Policy

{¶43} Richardson also brought a breach of public policy claim against Clinical Computing, Inc. Richardson contends that the complaint alleged a set of facts that would support a claim for a breach of Ohio public policy—specifically that

the "[d]efendants' decisions, conducts and/or actions * * * violate the public policy of the state of Ohio against age discrimination in employment."

{¶44} The Supreme Court of Ohio has held that "public policy warrants an exception to the employment-at-will doctrine when an employee is discharged or disciplined for a reason which is prohibited by statute." (Internal citations omitted.) *Greeley v. Miami Valley Maintenance Contrs., Inc.*, 49 Ohio St.3d 228, 234, 551 N.E.2d 981 (1990). As we determined earlier, Richardson was a contract employee with Clinical Computing PLC, and the service agreement governed any services with Clinical Computing, Inc., as a member of the "Group." Richardson provides no support that he had an at-will employee relationship with Clinical Computing, Inc. Therefore, his breach of Ohio public policy claim fails. *See, e.g., Haynes v. Zoological Soc. of Cincinnati*, 73 Ohio St.3d 254, 258, 652 N.E.2d 948 (1995).

### Promissory Estoppel

{¶45} Richardson argued in his complaint that the "Defendants made specific promises and/or representations of *continued, secure employment* to Plaintiff." (Emphasis added.) He asserted that a reasonable person would have relied on the defendants' promises and representations. Richardson alleged that he relied on the defendants' promises and representations to his detriment, and that the defendants breached their promises and representations. Richardson asserted that he was "damaged by Defendants' breach, and is entitled to judgment, and an award of compensatory and punitive damages, and injunctive relief."

{¶46} The trial court disposed of Richardson's claim on the ground that he "has failed to put forth any facts to show that an explicit promise was made of continued employment by [Clinical Computing, Inc.,] or that [he] relied upon a promise to his detriment."

17

{¶47}  In order to prevail on a promissory estoppel claim, Richardson had to show (1) a promise, clear and unambiguous in its terms; (2) his reliance upon the promise; (3) that his reliance was reasonable and foreseeable; and (4) that he was injured by his reliance.  *Hale v. Volunteers of Am.*, 158 Ohio App.3d 415, 2004-Ohio-4508, 816 N.E.2d 259, ¶ 50 (1st Dist.); *see Olympic Holding Co., L.L.C. v. ACE Ltd.*, 122 Ohio St.3d 89, 2009-Ohio-2057, 909 N.E.2d 93, ¶ 39.

{¶48}  Although Richardson alleged that he was employed by the defendants, we know from the service agreement that Clinical Computing PLC was Richardson's sole employer and that all other agreements and arrangements between Richardson and members of the "Group" were cancelled.  The service agreement demonstrates that Clinical Computing, Inc., was not Richardson's employer, and therefore, a claim based on "continued, secure employment" is impossible and therefore fails.  *See NCS Healthcare, Inc.*, 160 Ohio App.3d 421, 2005-Ohio-1669, 827 N.E.2d 797 at ¶ 27.

### Age Discrimination

{¶49}  Richardson alleged in Count I of his complaint that "Defendant's decisions, conduct and/or actions * * * were based upon his age and/or [his] age was a motivating factor in Defendant's decisions, conduct[,] and/or actions."  Richardson contends that the "Defendant's decisions, conduct[,] and/or actions violate Ohio's statutes prohibiting age discrimination in employment (O.R.C. Section 4112 et seq.)."  Furthermore, Richardson claims that the "Defendant's" violation of Ohio law was willful.  Because Richardson was not employed by Clinical Computing, Inc., we only address his age discrimination claim against Clinical Computing, Inc., as to hiring.

{¶50}  Age discrimination claims are covered primarily under R.C. 4112.02 and 4112.14.  *Meyer v. UPS*, 122 Ohio St.3d 104, 2009-Ohio-2463, 909 N.E.2d 106, ¶

28. An age discrimination claim brought under R.C. 4112.99 is subject to the substantive provisions of R.C. 4112.02 and 4112.14. *Id.* at ¶ 56.

{¶51} R.C. 4112.02(A) generally prohibits discriminatory employment practices, including age discrimination; however, an individual bringing a claim under R.C. 4112.02 must file an action within 180 days after the occurrence of the alleged unlawful discriminatory practice. R.C. 4112.02(N); *see Meyer* at ¶ 9.

{¶52} R.C. 4112.14 prohibits age discrimination by an employer. The employee may bring a cause of action for age discrimination under R.C. 4112.14(B) within six years of the cause of action. *See Meyer* at ¶ 52; *Morris v. Kaiser Engineers, Inc.*, 14 Ohio St.3d 45, 471 N.E.2d 471 (1984), paragraph two of the syllabus. (R.C. 4112.14 was previously codified as R.C. 4101.17.)

{¶53} Because Richardson filed this action almost a year after the alleged discriminatory practice is alleged to have occurred, he is outside of the limitations period under R.C. 4112.02. *See Schamer v. W. & S. Life Ins. Co.*, 1st Dist. Hamilton No. C-040057, 2004-Ohio-4249, ¶ 9-11. Therefore, we review whether he has an action pursuant to R.C. 4112.14.

{¶54} R.C. 4112.14(A) provides, "No employer shall discriminate in any job opening against any applicant * * * aged forty or older who is physically able to perform the duties and otherwise meets the established requirements of the job and laws pertaining to the relationship between employer and employee." To prevail in an age discrimination case, Richardson must prove discriminatory intent, and may do so through direct or indirect evidence. *See Coryell v. Bank One Trust Co. N.A.*, 101 Ohio St.3d 175, 2004-Ohio-723, 803 N.E.2d 781. To establish a prima facie case absent direct evidence, Richardson must prove by a preponderance of the evidence that he (1) was a member of a statutorily protected class, i.e., was at least 40 years

old at the time of the discriminatory action, (2) suffered an adverse employment action, e.g., was not hired for a position for which he applied, (3) was qualified for the position, and that (4) the position was awarded to a person of substantially younger age. *See Warden v. Ohio Dept. of Natural Resources,* 2014-Ohio-35, 7 N.E.3d 533, ¶ 29 (10th Dist.); *Dautartas v. Abbott Laboratories,* 10th Dist. No. 11AP-706, 2012-Ohio-1709, ¶ 26; *Coryell* at paragraph one of the syllabus.

{¶55} Richardson argues that the complaint alleged a set of facts that would support a claim for age discrimination. Specifically, in the "factual allegations" section of his complaint, Richardson alleged that he was 56 years old at the time of the discriminatory action. He asserted that the "Defendants confirmed * * * that [his] resignation would not prejudice his other employment rights in any way." Richardson further proclaimed that "Defendants did not even interview [him] for positions for which he applied and/or for which he was qualified."

{¶56} Richardson, in Count I, alleged that the "Defendant interviewed and/or hired substantially younger candidates/employees for positions for which [he] was qualified." In his factual allegations, Richardson refers to all of the defendants in this action. But, in his count for age discrimination, Richardson refers to a sole defendant. The language in the complaint does not state which defendant should be involved in the age discrimination claim. However, because we must accept all factual allegations in the complaint as true, and draw all reasonable inferences in favor of Richardson as the nonmoving party, we find that the court erred in dismissing Richardson's claim for age discrimination against Clinical Computing, Inc. The facts alleged support a possible claim for age discrimination against Clinical Computing, Inc., regarding hiring practices.

{¶57}  The trial court properly dismissed Richardson's claims against Clinical Computing, Inc., for breach of contract, breach of the covenant of good faith and fair dealing, breach of public policy, and promissory estoppel.  However, the trial court erred in dismissing Richardson's claim against Clinical Computing, Inc., for age discrimination only as to hiring practices under R.C. 4112.14.

## Conclusion

{¶58}  We hold that Clinical Computing PLC was properly served pursuant to the Ohio Rules of Civil Procedure and the Hague Service Convention, and therefore, the trial court erred in dismissing Richardson's complaint against Clinical Computing PLC.  We also hold that the trial court erred in dismissing Richardson's age discrimination claim, only as to hiring practices, against Clinical Computing, Inc., but affirm the trial court's dismissal of his claims for breach of contract, breach of the covenant of good faith and fair dealing, breach of Ohio public policy, and promissory estoppel against Clinical Computing, Inc.  Therefore, we affirm the trial court's judgment in part, reverse in part, and remand for further proceedings consistent with this opinion.

Judgment affirmed in part, reversed in part, and cause remanded.

FISCHER, P.J., concurs.
CUNNINGHAM, J., concurs in judgment only.

Please note:

This court has recorded its own entry this date.