[Cite as *Slosar v. Homestead Creek Homeowners Assoc., Inc.*, 2011-Ohio-4420.]

# Court of Appeals of Ohio

EIGHTH APPELLATE DISTRICT
COUNTY OF CUYAHOGA

JOURNAL ENTRY AND OPINION
No.   96320

## PATRICIA SLOSAR, ET AL.

PLAINTIFFS-APPELLEES

vs.

## HOMESTEAD CREEK
## HOMEOWNERS ASSOCIATION, INC.

DEFENDANT-APPELLANT

### JUDGMENT:
### AFFIRMED

Civil Appeal from the
Parma Municipal Court
Case No.   10 CVI 02719

**BEFORE:**   Keough, J., Blackmon, P.J., and E. Gallagher, J.

**RELEASED AND JOURNALIZED:**   September 1, 2011

**ATTORNEY FOR APPELLANT**

Joseph F. Salzgeber
Foth & Foth Co., L.P.A.
11221 Pearl Road
Strongsville, OH 44136


**ATTORNEY FOR APPELLEES**

Richard L. Stoper, Jr.
Rotatori Bender Co., L.P.A.
800 Leader Building
526 Superior Avenue, N.E.
Cleveland, OH 44114

KATHLEEN ANN KEOUGH, J.:

{¶ 1} Defendant-appellant, Homestead Creek Homeowners Association, Inc. ("Homestead" or "the Association"), appeals the trial court's decision awarding judgment in favor of plaintiffs-appellees, Patricia and John Slosar ("the Slosars"). For the reasons that follow, we affirm.

{¶ 2} In July 2010, the Slosars filed a complaint against Homestead and M2 Management Group, LLC ("M2") seeking reimbursement for expenses incurred in having an easement located on their property landscaped with new mulch. The matter was referred to a magistrate and the following facts were elicited at trial.

{¶ 3} The Slosars own a home and a large parcel of property at 8960 Avery Road in Broadview Heights, Ohio. Adjacent to the property are single-family homes that belong to and comprise the Association. Homestead is run by a Board of Trustees, which retained M2, owned by Leonard Mauger ("Mauger"), to operate the day-to-day affairs and operations of Homestead.

{¶ 4} This case centers around a Landscaping Easement that was entered into on July 2, 1991 between Homestead and SMS Development Co., Inc. for a parcel of land adjoining the 8960 Avery Road property. This easement was negotiated at the same time that the Slosars purchased the property from SMS Development. The easement was created to give access to and enhance the surroundings of the Homestead Creek development. The easement parcel contains a lengthy brick wall and detailed landscaping that extends in front of

the Slosars' property and continues into the development entranceway. The Slosars' property faces the backside of the wall. John Slosar testified that the Landscaping Easement was specifically established because of the Slosars' concern about the maintenance of the easement property.

{¶ 5} Pursuant to the terms of the Landscaping Easement, Homestead had "the right to enter upon said premises to inspect, maintain, and if necessary, replant the landscaping placed by [the Slosars] thereon and repair the stone wall erected thereon." Further, it obligated Homestead "to maintain the stone wall and landscaping in at least their condition as of the date" the Landscaping Easement was executed. In the event that Homestead failed "to maintain the easement area as provided herein, then [the Slosars] * * * shall, after thirty (30) days written notice to [Homestead] to remedy the situation, have the right to either maintain or repair the landscaping and charge [Homestead] therefor, or terminate the easement."

{¶ 6} The Slosars testified that every year from 1991 until approximately 2008, the easement property was cleaned, weeded, edged, and freshly mulched to their satisfaction. However, in 2008, after Homestead elected a new Board of Trustees and M2 was retained as the new property management company, the yearly mulching did not occur on their easement property.

{¶ 7} Beginning in the fall of 2009, M2 received various communications from the Slosars requesting that their easement property be mulched and edged. On April 17, 2010, the Slosars sent a fax to Mauger indicating that their easement property needed to be cleaned, edged, and mulched because it was not done in 2009. In response to the fax, Homestead directed M2 to have the landscapers remove mulch from an existing landscaped area on the Homestead Creek property and apply it to the Slosars' side of the easement property. Additionally, Mauger and the landscaper conferred with the Slosars and confirmed that their easement property would be cleaned and mulched.

{¶ 8} Subsequently, on May 14, the Slosars called Mauger expressing concern that while landscaping work was being performed on Homestead's property and portion of the easement, no work was being performed on their side of the easement property. Mauger reassured the Slosars that the landscapers had not completed the landscaping in the area.

{¶ 9} On May 17, the Slosars sent another fax to Mauger stating that their personal landscaper would be at their home on "Wednesday [May 19] or Thursday [May 20]" and if M2 could not provide a reasonable completion date for the landscaping, they would have the work done by their personal landscapers and ask for reimbursement from Homestead. Mauger subsequently informed the Slosars that he would address their issues at the Board of Trustees meeting that evening and get back to them the following day.

Later that day, Mauger received an email from his landscapers informing him that existing mulch had been removed from the "center island" of the Homestead Creek development and placed on the Slosars' side of the easement. Mauger conceded that he did not verify that this work was actually done and it appears this information was not shared with the Slosars. Moreover, Mauger admitted that the amount of mulch that would have been moved from the "center island" was not enough to cover the area to be mulched on the Slosars' side of the easement.

{¶ 10} When the Slosars did not hear from Mauger the following day and their phone calls were unanswered and unreturned on the days that followed, they had their landscaper apply 12 yards of mulch on their easement parcel at a cost of $733.77.

{¶ 11} The Slosars submitted the invoice to Homestead for reimbursement; however, Homestead refused to pay the bill, claiming it was not obligated to mulch the easement parcel under the Landscaping Easement because mulch is not "maintenance" but serves as beautification and enhancement. The Slosars testified that beautification was one aspect of mulch; however, John Slosar also testified that mulch controls weed growth.

{¶ 12} The magistrate issued a written decision granting Homestead's oral motion to dismiss M2, but finding in favor of the Slosars and awarding judgment in the amount of $733.77, plus interest. Homestead filed objections

to the magistrate's decision, which the trial court overruled, adopting the magistrate's decision.

{¶ 13} Homestead appeals, raising the following assignment of error for this court to consider:

**"The trial court erred by interpreting the recorded landscaping easement, which required the defendant Homeowners Association to maintain the brick wall and landscaping in the easement area located on the plaintiff Homeowners' property, as requiring that the defendant association to reimburse the plaintiffs for the cost of placing new mulch on their side of the easement area, where: (1) plaintiffs did not provide the required 30-day notice; (2) defendant had been informed by its expert landscapers that no new mulch was needed and, therefore, instead caused existing mulch to be moved from the entrance 'island' to the easement area on plaintiff's property in response to their requests; and (3) the new mulch was not necessary for maintenance purposes, but only for mere beautification purposes."**

{¶ 14} The Slosars' brief succinctly sets forth and dissects the relevant issues in this appeal: (1) whether the notice given by the Slosars was sufficient and in accordance with the Landscaping Easement, (2) whether the Landscaping Easement is enforceable as an independent contract and is not subject to the business-judgment rule, and (3) whether maintenance of the landscaping on the easement includes mulching.

{¶ 15} Appellate review of a trial court's interpretation of an easement agreement is conducted under a de novo standard of review, but we defer to the trial court's factual findings if there is competent, credible evidence that

supports the trial court's decision. *Murray v. Lyon* (1994), 95 Ohio App.3d 215, 219, 642 N.E.2d 41.

{¶ 16} Homestead first contends that the trial court erred in finding that the Slosars complied with the 30-day notice requirement under the Landscaping Easement.

{¶ 17} The pertinent language of the Landscaping Easement provides: "Should [Homestead] fail to maintain the easement area as provided herein, then [the Slosars] * * * shall, after thirty (30) days written notice to [Homestead] to remedy the situation, have the right to either maintain or repair the landscaping and charge [Homestead] therefor, or terminate the easement."

{¶ 18} The plain and unambiguous language of the easement provided that the Slosars were required to give Homestead 30 days written notice to remedy their failure to maintain the easement. If the requisite notice was given and Homestead did not remedy the issue, then the Slosars had the right to either maintain or repair the landscaping and charge Homestead, or terminate the easement.

{¶ 19} Clearly, Homestead has failed to maintain the easement since 2008 because it is undisputed that no maintenance to the easement was performed in 2009. It is also undisputed that the Slosars' fax constitutes "written notice."

Therefore, the issue is whether the April 17 faxed correspondence was sufficient notice under the Landscaping Easement.

{¶ 20} The April 17 fax, which the Slosars sent to Mauger stated: "Please be advised that the easement on [our] property will need [to be] cleaned, edged and mulched this year. You will recall no mulching or edging was done last spring to save the development on costs. However, this year the work will need to [be] part of your spring activities."

{¶ 21} Homestead argues that this faxed correspondence was insufficient because it did not mention the 30-day clause of the recorded Landscaping Easement and it did not affirmatively state that the Slosars would exercise their rights to maintain or repair the landscaping and charge the Association if the requested work was not performed in the easement area. Although the faxed correspondence is devoid of any formal language found in the Landscaping Easement, the subsequent actions taken by Homestead and its agents evidence that it understood the nature and purpose of the correspondence.

{¶ 22} Mauger testified that after receiving the fax, he contacted the landscaping contractor regarding moving mulch from the front entrance area of the development to the Slosars' easement property. Additionally, on April 30, Mauger and the landscaper informed the Slosars that they would be cleaning and mulching the Slosars' portion of the easement. On May 14 there

was more communication between Patricia Slosar and Mauger after Patricia noticed that the landscapers only cleaned and mulched the area on Homestead's portion of the easement area, and not the Slosars' side. On May 17, Patricia again faxed correspondence to Mauger regarding the lack of attention to the easement. She indicated that her personal landscapers were coming to do work on that Wednesday (May 19) or Thursday (May 20) on other areas of their property. She requested a reasonable completion date and stated that if one could not be given, she would have her landscapers landscape the easement and she would bill the Association. No further correspondences were exchanged between the Slosars and Mauger or Homestead.

{¶ 23} We find competent and credible evidence supporting the trial court's findings and conclusion that the Slosars complied with the thirty-day notice requirement when they sent a fax to Mauger on April 17 requesting that Homestead maintain the easement. According to the Landscaping Easement, the Slosars could have terminated the easement and essentially removed the wall and other landscaping erected on the easement property. We find that the Slosars chose the more neighborly solution under the Landscaping Easement by having $733 worth of mulch applied to their property.

{¶ 24} Next, Homestead contends that the trial court erred in finding that the business-judgment rule does not apply in this matter. Homestead

maintains that the business-judgment rule allows it to exercise discretion under the Landscaping Easement.

**{¶ 25}** The business-judgment rule "is a rebuttable presumption that directors are better equipped than the courts to make business judgments and that the directors acted without self-dealing or personal interest and exercised reasonable diligence and acted with good faith. A party challenging a board of directors' decision bears the burden of rebutting the presumption that the decision was a proper exercise of the business judgment of the board." *Gries Sports Ent., Inc. v. Cleveland Browns Football Co.* (1986), 26 Ohio St.3d 15, 20, 496 N.E.2d 959.

**{¶ 26}** The business-judgment rule is inapplicable to this case because the Slosars' cause of action arises from an independent easement contract between them and Homestead, and not from any bylaws or regulations that might create any fiduciary relationship between Homestead and the Slosars. In general, "[a]n easement is the interest in the land of another, created by prescription or express or implied grant, that entitles the owners of the easement, the dominant estate, to a limited use of the land in which the interest exists, the servient estate." (Citations omitted.) *Crane Hollow, Inc. v. Marathon Ashland Pipe Line, LLC* (2000), 138 Ohio App.3d 57, 66, 740 N.E.2d 328. When interpreting the terms of a written easement document, courts must follow the rules of contract construction "so as to carry out the

intent of the parties, as that intent is evidenced by the contractual language." *Lakewood Homes v. BP Oil, Inc.*, Hancock App. No. 5-98-29, 1999-Ohio-851, citing *Skivolocki v. E. Ohio Gas Co.* (1974), 38 Ohio St.2d 244, 313 N.E.2d 374, paragraph one of the syllabus. The language of an easement, considered in light of the surrounding circumstances, is the best indication of the extent and limitations of the easement. *Apel v. Katz*, 83 Ohio St.3d 11, 17, 1998-Ohio-420, 697 N.E.2d 600.

{¶ 27} In this case, the Landscaping Easement expressly obligates Homestead "to maintain the stone wall and landscaping in at least their condition as of the date hereof." Past actions by Homestead indicates that the Slosars' easement property was weeded, cleaned, edged, and mulched every year from 1991 until 2008. Because the Slosars are not members of the Association, but private homeowners who have a contractual easement with Homestead, we find that the trial court did not err in finding that the business-judgment rule does not apply.

{¶ 28} Finally, Homestead contends that the trial court erred in finding that mulch is considered "maintenance." The Landscaping Easement expressly provides that Homestead is to "maintain the landscaping" as it existed at the time the easement was established. The Slosars testified that re-mulching of their easement was an ongoing activity performed by Homestead since 1991.

**{¶ 29}** We find that competent and credible evidence exists supporting the trial court's finding that mulch is not just for beautification, but is also a form of landscaping maintenance. John Slosar testified that mulch is applied to hinder weeds growing in the landscaped areas. Although there was testimony that mulch may be used primarily for beautification purposes, we find that mulch serves a dual purpose — preventing weeds and allowing proper water drainage while preserving and maintaining the beauty of the area. Therefore, we find that Homestead's obligation to "maintain the landscaping" includes mulching.

**{¶ 30}** Accordingly, we find that the trial court did not err in adopting the magistrate's decision and entering judgment in favor of the Slosars in the amount of $733.77, plus interest. Homestead's assignment of error is overruled.

Judgment affirmed.

It is ordered that appellees recover from appellant costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate be sent to said court to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

KATHLEEN ANN KEOUGH, JUDGE

PATRICIA ANN BLACKMON, P.J., and
EILEEN A. GALLAGHER, J., CONCUR