[Cite as *Tuttle v. Collins*, 2020-Ohio-4062.]

## COURT OF APPEALS OF OHIO

## EIGHTH APPELLATE DISTRICT
## COUNTY OF CUYAHOGA

CHRISTEEN TUTTLE, ET AL.,  :

    Plaintiffs-Appellants,  :

                              No. 108909

    v.  :

TIM COLLINS, ET AL.,  :

    Defendants-Appellees.  :

---

### JOURNAL ENTRY AND OPINION

**JUDGMENT:** AFFIRMED
**RELEASED AND JOURNALIZED:** August 13, 2020

---

Civil Appeal from the Cuyahoga County Court of Common Pleas
Case No. CV-19-916042

---

### *Appearances:*

The Pattakos Law Firm L.L.C., Peter Pattakos, and Rachel Hazelet, *for appellants.*

Mazanec, Raskin & Ryder Co., L.P.A., Todd M. Raskin, and Frank H. Scialdone, *for appellees.*


RAYMOND C. HEADEN, J.:

{¶ 1} Plaintiffs-appellants Christeen Tuttle, Richard Parke, and Dr. Ted Peterson ("Appellants") appeal from the trial court's decision granting defendants-

appellees' motion to dismiss pursuant to Civ.R. 12(C).  For the reasons that follow, we affirm the lower court's ruling.

## I.　Factual and Procedural History

{¶ 2}　On May 30, 2019, Appellants, on behalf of Dunham Tavern Museum ("DTM"), filed a derivative lawsuit naming Tim Collins ("Collins") and David Wagner ("Wagner")[1] as defendants and Dunham Tavern Museum ("DTM") as a nominal defendant ("Appellees"), and sought to void the DTM Board's authorization to sell land to the Cleveland Foundation.

{¶ 3}　DTM is a not-for-profit corporation whose mission and vision is to maintain, develop, and share the DTM campus for educational and cultural purposes; provide urban green space in Midtown Cleveland; and return the DTM to its roots by serving as a place for urban history, education, nature, and community. (Complaint at ¶ 2.)  DTM's Board is governed by DTM's bylaws.

{¶ 4}　Around 2012, DTM acquired 2.28 acres of land ("the Greenspace") in furtherance of its mission and vision.  Between 2012 and 2017, DTM ran a financial campaign and raised over $700,000 to develop the Greenspace.  Improvements were made to the Greenspace including the construction of a new stone wall, building a new gathering space and patio, planting trees, and making improvements to the existing landscaping.

---

[1] Collins and Wagner, at all relevant times, were members of the DTM Board of Trustees ("Board").

{¶ 5} In early 2018, the Cleveland Foundation demonstrated an interest in purchasing 1.2 acres of the Greenspace for its new headquarters. The proposed sale of the acreage to LASSI Enterprises, L.L.C., as a designee of the Cleveland Foundation, was discussed with Collins and Wagner, members of the DTM Board.

{¶ 6} In 2018, Wagner and William Nice ("Nice"), husband of Board member Laurie Nice, obtained an appraisal of DTM's real estate including the Greenspace. Wagner and Nice were both members and managing directors of Hanna Commercial Real Estate Co. The appraisal served as a basis for the purchase price in the proposed sale to the Cleveland Foundation. No additional appraisals were obtained.

{¶ 7} The Board first learned of the proposed sale on December 11, 2018, and the membership was formally notified at a later date. Not all of the DTM membership supported the proposed sale. On March 1, 2019, a letter signed by 26 DTM members and donors was presented to the Board that stated their dissatisfaction with the proposed sale and their intent to cancel or withhold future donations to DTM. Regardless, the Board, including Wagner and Collins, proceeded with obtaining the Board's vote to approve the sale.

{¶ 8} The first vote took place in February 2019, and resulted in a 10-7 vote in favor of authorizing DTM to execute a letter of intent to participate in a proposed sale of a portion of the Greenspace to the Cleveland Foundation. A second vote on March 12, 2019, reflected a 12-6 vote, again in favor of the proposed sale, and a purchase agreement was executed following that vote. However, several members

of the Board voiced their concern regarding the sufficiency of the vote. Specifically, the members questioned whether trustees Bole, Collins, Ellner, Luby, Nice, Wagner, and Warren had conflicts of interest or conflicts of responsibility because they allegedly would benefit financially and personally from the sale of the real estate.[2] The presence of a conflict of interest or conflict of responsibility at the time of the Board vote allegedly resulted in a bylaws violation. It was also alleged that trustees Bole, Nice, and Rokententz voted on March 12, 2019, even though their membership dues were in arrears, also in violation of DTM's bylaws. The argument presented was that because the March 12, 2019 vote was taken in violation of DTM's bylaws, the subsequently issued letter of intent and purchase agreement were unauthorized and void. Appellants communicated these concerns via a letter on April 5, 2019, from Appellants' counsel to Collins in his capacity as Board president.

{¶ 9} Appellants' counsel forwarded a second letter on April 30, 2019, that demanded the Board (1) comply with DTM's bylaws regarding conflicts of interest and responsibility and voting requirements, and (2) resubmit the proposed sale for a vote that complied with DTM's bylaws and demanded abstentions by those board members with conflicts of interest. The letter also notified the Board that Appellants would initiate litigation to protect DTM's interests. In an attempt to remedy the challenged vote, a revote occurred on May 14, 2019. Each voting trustee completed

---

[2] The Appellants claim several trustees' engagement with the Cleveland real-estate market, including ownership with properties neighboring DTM, translate to financial and personal gains to those trustees upon the sale of a portion of the Greenspace.

a conflict of interest questionnaire. Per Appellees, the questionnaire responses indicated the absence of any conflicts of interest by any of the voting trustees, including those named in the complaint. Additionally, the Executive Director of DTM verified all trustees voting on May 14, 2019, had fully paid their membership dues. The revote resulted in a 12-6 vote, again in favor of the proposed sale.

{¶ 10} Appellants continued to challenge the validity of the May 14, 2019 vote, and on May 28, 2019, Appellants' attorney forwarded a letter to the Board that demanded the Board declare the vote approving the proposed sale as invalid. Appellants continued to argue that the vote violated DTM's bylaws due to conflicts of interest and conflicts of responsibility held by a number of trustees and a violation of the voting procedures. The Appellants, through counsel, also claimed Collins and Wagner breached their fiduciary duties as directors because they received a personal or financial gain from the proposed sale. The Board neither rescinded nor invalidated the May 14, 2019 vote.

{¶ 11} On August 16, 2019, Appellants filed a derivative lawsuit identifying three causes of action:

Count 1 — violation of bylaws relating to conflicts of interest

Count 2 — violation of bylaws relating to voting procedures

Count 3 — breach of fiduciary duty.

Within the complaint, Appellants sought a declaration that the letter of intent and purchase agreement to sell the property to the Cleveland Foundation were based upon a vote taken in violation of DTM's bylaws and in breach of Collins's and

Wagner's fiduciary duties, and therefore, the Board's acts were unauthorized. Appellants sought invalidation and recission of the documents authorizing DTM's sale of the property. Appellants also sought compensatory and punitive damages from the individual Appellees based upon their alleged breach of fiduciary duties.

{¶ 12} Appellees filed a timely answer and counterclaim on June 28, 2019, as well as a motion for judgment on the pleadings ("motion for judgment") pursuant to Civ.R. 12(C). Appellees also filed a preliminary injunction. The trial court granted Appellees' motion for judgment on the pleadings on July 24, 2019, and found Appellees' request for a preliminary injunction moot. The trial court filed a journal entry on July 24, 2019, indicating the case was dismissed with prejudice.

{¶ 13} On August 16, 2019, Appellants filed a timely appeal and raised four assignments of error:

> Assignment of Error 1: The trial court erred when it entered judgment on the pleadings on Plaintiffs' claim for violation of DTM bylaw barring conflicts of interest and conflicts of responsibility.

> Assignment of Error 2: The trial court erred by entering judgment on the pleadings on Plaintiffs' claim for breach of fiduciary duty against the individual Defendants.

> Assignment of Error 3: The trial court erred by entering judgment on the pleadings on Plaintiffs' claim for violations of the DTM bylaws regulating voting procedures.

> Assignment of Error 4: The trial court erred by failing to permit Plaintiffs the opportunity to amend their Complaint to correct any pleading deficiencies.

{¶ 14} Following the trial court's dismissal of the case, Appellants did not file a motion for stay or injunction in an attempt to prevent transfer of the property to

the Cleveland Foundation. During the pendency of this appeal, the Board executed the purchase agreement for the sale of 1.2 acres to the Cleveland Foundation. DTM transferred title to the property by a deed that was executed on November 21, 2019, and recorded with the Cuyahoga County Recorder on November 25, 2019.

## II. Law and Analysis

### A. Motion for Judgment on the Pleadings

{¶ 15} Appellants contend that the trial court erred when it granted Appellees' Civ.R. 12(C) motion for judgment.

{¶ 16} A judgment on the pleadings raises only questions of law that are reviewed under a de novo standard of review. *Cohen v. Bedford Hts.*, 8th Dist. Cuyahoga No. 101739, 2015-Ohio-1308, ¶ 7. An appellate court must "accept all factual allegations of the complaint as true and draw all reasonable inferences in favor of the nonmoving party." *Grey v. Walgreen Co.*, 197 Ohio App.3d 418, 2011-Ohio-6167, 967 N.E.2d 1249, ¶ 3 (8th Dist.), citing *Byrd v. Faber*, 57 Ohio St.3d 56, 565 N.E.2d 584 (1991). A determination of a motion for judgment takes into consideration the complaint, answer, and any material attached as exhibits to those pleadings. *Schmitt v. Educational Serv. Ctr.*, 8th Dist. Cuyahoga No. 97623, 2012-Ohio-2210, ¶ 9. However, unsupported conclusions are not considered admitted and are not sufficient to withstand a motion to dismiss. *Mitchell v. Lawson Milk Co.*, 40 Ohio St.3d 190, 193, 532 N.E.2d 753 (1988).

{¶ 17} Courts review Civ.R. 12(C) motions under a Civ.R. 12(B)(6) standard:

> The Ohio Supreme Court has held that a Civ.R. 12(C) motion for judgment on the pleadings is to be considered as if it were a belated

motion to dismiss for failure to state a claim upon which relief can be granted. *State ex rel. Pirman v. Money* (1994), 69 Ohio St.3d 591, 592, 1994 Ohio 208, 635 N.E.2d 26. Therefore, we will analyze the [Civ.R 12(C) motion] under the same principles which we would apply in reviewing a Civ.R. 12(B)(6) dismissal.

*Black v. Coats*, 8th Dist. Cuyahoga No. 85067, 2005-Ohio-2460, ¶ 6.

{¶ 18} A Civ.R. 12(B)(6) "'motion to dismiss for failure to state a claim upon which relief can be granted is procedural and tests the sufficiency of the complaint.'" *State ex rel. Hanson v. Guernsey Cty. Bd. of Commrs.*, 65 Ohio St.3d 545, 548, 605 N.E.2d 378 (1992), quoting *Assn. for the Defense of the Washington Local School Dist. v. Kiger*, 42 Ohio St.3d 116, 117, 537 N.E.2d 1292 (1989). In Ohio, under notice pleading, a plaintiff need not prove his case at the pleading stage. *DSS Servs., L.L.C. v. Eitel's Towing, L.L.C.*, 10th Dist. Franklin No. 18AP-567, 2019-Ohio-3158, ¶ 10. A plaintiff is required under Civ.R. 8(A)(1) to provide a short and plain statement of the claim demonstrating that the claimant is entitled to relief. *McBride v. Parker*, 5th Dist. Richland No. 11 CA 122, 2012-Ohio-2522, ¶ 27. "In order to dismiss a complaint for failure to state a claim upon which relief can be granted, the court must find beyond doubt that plaintiff can prove no set of facts warranting relief after it presumes all factual allegations in the complaint are true, and construes all reasonable inferences in plaintiff's favor." *Black* at ¶ 7, citing *State ex rel. Seikbert v. Wilkinson*, 69 Ohio St.3d 489, 490, 633 N.E.2d 1128 (1994).

### 1. Conflict of Interest

{¶ 19} Under the first assignment of error, Appellants argue that the trial court erred when it granted Appellees' motion for judgment because DTM violated Article II, Section 6 of its bylaws that reads:

> Article II, Board of Trustees, Section 6, Duality of Interest
>
> A Trustee having a conflict of interest or conflict of responsibility on any matter involving the Corporation and any other business entity or person shall refrain from voting on such matter. No Trustee shall use his or her position as a Trustee of the Corporation for his or her own direct or indirect financial gain.[3]

{¶ 20} Under Count 1 of their complaint, Appellants allege that trustees Collins, Wagner, Bole, Ellner, Luby, Nice, and Warren — all who voted to approve the proposed sale to the Cleveland Foundation — violated the above bylaw due to their conflicts of interest. The presence of those conflicts allegedly resulted in an

---

[3] The terms "conflict of interest" and "conflict of responsibility" are not defined within the bylaws. "Conflict of interest" is a term used regularly within the legal context and has been defined as "'a real or seeming incompatibility between one's private interests and one's public or fiduciary duties.'" *In re Testamentary Trust of Bernard*, 9th Dist. Summit No. 24025, 2008-Ohio-4338, ¶ 16, quoting *Black's Law Dictionary* 319 (8th Ed.Rev.2004). In contrast, "conflict of responsibility" is not a term of art adopted in this same arena, and the appellants' introduction of the *American Society of Diagnostic & Interventional Nephrology's* definition of a "conflict of responsibility" is tenuous at best to indicate DTM's intended application of the term. Further, there is no recognized cause of action in Ohio against a trustee for a conflict of responsibility nor, as conceded by Appellants, is there any case law in Ohio or any jurisdiction on this issue. Accordingly, the trial court correctly dismissed the portion of Count 1 of Appellants' complaint that alleged a conflict of responsibility. *Krause v. Case W. Res. Univ.*, 8th Dist. Cuyahoga No. 70712, 1996 Ohio App. LEXIS 5784, 33 (Dec. 19, 1996). (A cause of action unrecognized in Ohio does not represent a cognizable claim and fails to state a claim upon which relief can be granted.) The remainder of this opinion will address only Appellants' alleged conflict of interest.

improper vote authorizing the trustees to enter the proposed sale with the Cleveland Foundation. The conflicts of interest stem from the trustees' involvement with the Cleveland real estate market and the claim that they will benefit financially, either directly or indirectly, from the proposed sale. Appellants seek the invalidation and rescission of the documents that authorized the trustees to enter the proposed sale.

{¶ 21} The trustees' connections to the real-estate market vary widely. Collins is engaged in the commercial real-estate market as a partner in a law firm that practices real estate law. Wagner is a principal and managing director of Hanna Commercial Real Estate, a commercial real-estate broker. Appellants contend that Collins's and Wagner's recommendations, facilitation, and participation in the sale of DTM's property conferred a benefit on their past, current, and potential clients, but provide no specific instances of such gain. (Complaint at ¶ 40.)

{¶ 22} Plaintiffs further propose a conflict of interest on behalf of DTM board member Laurie Nice because her husband, Nice, is a principal and managing director for Hanna Commercial Real Estate. (Complaint at ¶ 43.) Nice, in conjunction with Collins, prepared an appraisal of the property in question. (Complaint at ¶ 23.) DTM board member Russel Warren's purported conflict of interest stems from his position as managing director for Edgepoint Capital, a company that brokered real-estate transactions in the area surrounding the DTM property. (Complaint at ¶ 44.) Board member Brenda Ellner owns interest in real-estate parcels neighboring the DTM property. (Complaint at ¶ 45.) Board member Richard Bole, Jr. is married to Aparna Bole, a trustee on the board of Midtown,

Cleveland, Inc., which owns the LASSI Enterprises L.L.C.  LASSI Enterprises L.L.C. is the designated purchaser of the DTM property.  (Complaint at ¶ 46.)  And a conflict of interest allegedly exists for DTM board member Wendy Luby who is an employee of Key Bank where Cleveland Foundation is a client.  (Complaint at ¶ 47.)

{¶ 23} The Appellants argued that the property values surrounding DTM will increase dramatically due to the proposed sale, and in turn, the trustees will experience a financial gain.  Appellants' complaint stated:

> [I]f the Cleveland Foundation builds and operates its headquarters on the DTM Greenspace, the surrounding real estate will increase in value significantly and substantially, and the owners of the surrounding property — including other repeat players in the Cleveland real estate market and past, current, and potential clients of Collins and Wagner — will realize significant and substantial financial benefit as a result.

(Complaint at ¶ 39.)

{¶ 24} Appellants' conclusions that the noted trustees will personally benefit from the sale are based on a March 2019 Greater Cleveland Partnership press release that reads:

> The DTM is located in a federally designated "opportunity zone," and is thus subject to legislation giving private investors investing capital gains into real estate within the zone a range of potential tax breaks on the profits from those real estate investments.  According to a March 2019 press release by the Greater Cleveland Partnership, the local chamber of commerce, "the floodgates are about to open regarding investment in opportunity zones," and "the program has the potential to raise hundreds of millions of dollars in catalytic urban development opportunities here, stimulating growth and job creation in Cleveland and surrounding communities," including the "Health-Tech Corridor" opportunity zone in which the DTM resides.

(Complaint at ¶ 36.)

**{¶ 25}** It is these speculative property value increases that serve as the basis for the trustees' alleged financial gain or conflict of interest. The above statements, relied upon in Count 1 of Appellants' complaint, are simply a recitation of a local chamber of commerce's press release and are "legal conclusions, deductions, or opinions couched as factual allegations." *Allstate Ins. Co. v. Electrolux Home Prods.*, 8th Dist. Cuyahoga No. 97065, 2012-Ohio-90, ¶ 8. Property values are subject to a multitude of factors and it is unreasonable to assume that an increase in real estate values are guaranteed under any setting. For instance, real estate values declined following the unexpected 2008 recession. Similarly, the Covid-19 pandemic was unanticipated and is likely to adversely affect the commercial real-estate market. While the 2019 press release states there is a "potential" that the real estate values surrounding DTM will increase, the statement is merely conjecture and supposition and lacks any factual basis. Therefore, the statements are not considered in a Civ.R. 12(C) motion to dismiss.

**{¶ 26}** Upon review, we find Appellants' complaint lacks any factual allegations supporting or enhancing the inference that the property values surrounding DTM will increase in value following the proposed sale or that any trustees experienced financial gain from the sale. Without such allegations, the complaint fails to provide sufficient facts to support an essential element of their claim — i.e., personal gain by the trustees establishing a conflict of interest.

**{¶ 27}** "'[U]nsupported conclusions of a complaint are not considered admitted * * * and are not sufficient to withstand a motion to dismiss.'" *Electrolux*

*Home Prods.* at ¶ 8, quoting *State ex rel. Hickman v. Capots*, 45 Ohio St.3d 324, 544 N.E.2d 639 (1989), citing *Schulman v. Cleveland*, 30 Ohio St.2d 196, 198, 283 N.E.2d 175 (1972). "'"[L]egal conclusions, deductions, or opinions couched as factual allegations are not given a presumption of truthfulness.'"" *Electrolux Home Prods.* at ¶ 8, quoting *Williams v. U.S. Bank Shaker Square*, 8th Dist. Cuyahoga No. 89760, 2008-Ohio-1414, at ¶ 9, quoting *Crane & Shovel Sales Corp. v. Bucyrus-Erie Co.*, 854 F.2d 802, 810 (6th Cir.1988). Because Appellants' allegations of a conflict of interest are based upon deductions or opinions, they cannot withstand a motion to dismiss. We find Count 1 of Appellants' complaint is devoid of any factual allegations that support or enhance an inference that the identified trustees benefitted from the sale of the DTM property thereby demonstrating a conflict of interest. The trial court correctly dismissed Count 1 pursuant to Appellees' Civ.R. 12(C) motion, and we find no merit to Appellants' first assignment of error.

## 2. Breach of Fiduciary Duty

{¶ 28} Appellants' second assignment of error, which corresponds with Count 3 of the complaint, presented a claim for breach of fiduciary duty against Collins and Wagner. Appellants assert that a breach of Collins's and Wagner's fiduciary duties occurred when the two board members failed to disclose the existence of their conflicts of interest and responsibility; failed to abstain from participating in the proposed sale; and participated in the sale to accrue personal and financial gain. In other words, due to Collins's and Wagner's conflicts of interest, they breached their fiduciary duties.

{¶ 29} R.C. 1702.30 imposes fiduciary duties on a nonprofit corporation's board of directors. *DiPasquale v. Costas*, 186 Ohio App.3d 121, 2010-Ohio-832, 926 N.E.2d 682, ¶ 125 (2d Dist.).[4] A director's fiduciary duty is more clearly defined within R.C. 1702.30 and incorporates the dual duties of loyalty and care. The duty of loyalty requires a director to "perform * * * in good faith, in a manner the director reasonably believes to be in or not opposed to the best interests of the corporation," while the duty of care obligates a director to exercise "the care that an ordinarily prudent person in a like position would use under similar circumstances." R.C. 1702.30(B); *Vontz v. Miller*, 2016-Ohio-8477, 111 N.E.3d 452, ¶ 42 (1st Dist.), quoting R.C. 1701.59(B). A plaintiff must prove a breach of these duties by clear and convincing evidence. R.C. 1702.30(D)(1).

{¶ 30} Ohio courts look to the business judgment rule when reviewing a director's conduct. *Koos v. Cent. Ohio Cellular*, 94 Ohio App.3d 579, 589, 641 N.E.2d 265 (8th Dist.1994). The business judgment rule "'is a rebuttable presumption that directors are better equipped than the courts to make business judgments and that the directors acted without self-dealing or personal interest and exercised reasonable diligence and acted with good faith.'" *Slosar v. Homestead Creek Homeowners Assn.*, 8th Dist. Cuyahoga No. 96320, 2011-Ohio-4420, ¶ 25, quoting *Gries Sports Ent., Inc. v. Cleveland Browns Football Co.*, 26 Ohio St.3d 15, 20, 496 N.E.2d 959 (1986). "A party challenging a board of directors' decision bears

---

[4] For the purpose of a nonprofit corporation, the word "director" is synonymous with the term "trustee." R.C. 1702.01(K).

the burden of rebutting the presumption that the decision was a proper exercise of the business judgment of the board." *NCS Healthcare, Inc. v. Candlewood Partners, L.L.C.*, 160 Ohio App.3d 421, 2005-Ohio-1669, 827 N.E.2d 797, ¶ 26 (8th Dist.), quoting *Gries at* 20.

{¶ 31} "'[T]he general rule * * * [is] that directors carry the burden of showing that a transaction is fair only after the plaintiff has made a prima facie case showing that the directors have acted in bad faith or without the requisite objectivity.'" *Koos* at 589, quoting *Radol v. Thomas*, 772 F.2d 244, 257 (6th Cir.1985). Thus, to overcome the Civ.R. 12(C) motion, Appellants had to plead facts sufficient to avoid the presumption that Collins and Wagner acted in the best interest of DTM pursuant to the business judgment rule. *NCS Healthcare, Inc.* at ¶ 29.

{¶ 32} Appellants argue that Appellees Collins and Wagner breached their duties of loyalty because they were not disinterested directors — they expected to derive personal benefits from the proposed sale — and, therefore, the protections of the business judgement rule do not apply. *Gries* at 20, citing *Sinclair Oil Corp. v. Levien,* 280 A.2d 717, 720 (Del.1971).[5]

{¶ 33} Appellants rely on *Stepak v. Schey*, 51 Ohio St.3d 8, 14, 553 N.E.2d 1072 (1990), in support of their claim:

> It is well recognized that directors of a corporation occupy a fiduciary relationship to the corporation and its shareholders and are held

---

[5] Disinterested directors are also those who have participated on both sides of the disputed transaction. *Koos* at 590. Here, Appellants presented no allegations that Collins and Wagner engaged in such behavior.

strictly accountable and even liable if corporate property or funds are wasted or mismanaged due to their inattention to the duties of their trust. Consequently, "[w]hen a director breaches his duty of trust and benefits at the expense of the corporation, under Ohio law the director is liable for any profits he received. It matters not that the director acted absent actual fraudulent intent; as long as the director places himself in a position of conflicting loyalties and subsequently violates his primary obligation to the corporation, liability attaches."

*Id.*, quoting *Ohio Drill & Tool Co. v. Johnson*, 625 F.2d 738, 742 (6th Cir.1980).

{¶ 34} While Appellants maintain that Collins's and Wagner's involvement with the Cleveland real-estate market resulted in their direct or indirect financial benefit from the proposed sale, as is detailed above regarding Appellants' first assignment of error, Appellants' complaint failed to provide sufficient facts to establish a conflict of interest by Collins or Wagner.

{¶ 35} As stated by the trial court, Collins's and Wagner's employment in the real-estate industry — skills that may have made their presence on the board advantageous — do not equate to a conflict of interest:

The fact that any board member possesses a degree of proficiency and success in their career does not, in and of itself, constitute a conflict. In fact, that success is usually the very reason the member has been invited to participate on the board. The mere speculation of an undefined harm and/or benefit is insufficient to overcome defendants' motion for judgment on the pleadings.

(Trial court's opinion and order (Final) at 7.) Further, there are no allegations of wrongdoing by Hanna Commercial Real Estate or any indication this entity experienced a gain or benefit or was involved in the proposed sale except for generating an appraisal of the subject property. Collins's and Wagner's tenuous connections to the proposed sale fall short of providing a conflict of interest.

{¶ 36} Appellants failed to allege material facts stating the Appellees personally benefited from the sale of the DTM — facts required to establish Appellants' breach of fiduciary duty claim. Absent substantiated allegations of a conflict of interest, Count 3 of Appellants' complaint was properly dismissed under a Civ.R. 12(C) motion, and thus, Appellants' second assignment of error lacks merit.

### 3. Voting

{¶ 37} Under the third assignment of error, Appellants argue that the trial court erred when it granted Appellees' motion for judgment because DTM violated its voting bylaws. Specifically, Appellants argue that because the Board's May 14, 2019 vote did not comport with the bylaws' voting procedures, the vote was improper and did not authorize the Board to negotiate a sale of the subject real estate. Appellees argue that a complaint based upon conjecture, speculation, and legal conclusion was insufficient to maintain an action under Civ.R. 12(C).

{¶ 38} The Board took several votes regarding the proposed sale to the Cleveland Foundation. The first vote occurred in February 2019, with a final count of 10-7 in favor of authorizing DTM to execute a letter of intent to participate in the proposed sale. DTM's bylaws required a vote of at least 11 members to support a proposal. A second vote on March 12, 2019, resulted in a 12-6 tally in favor of the proposed sale. The Board secured a final vote on May 14, 2019, also in favor of the proposed sale.

{¶ 39} Appellants alleged in Count 2 of their complaint that the votes cast by trustees Bole, Nice, and Rokententz on May 14, 2019, were in violation of the bylaws

because those trustees' membership dues were in arrears at the time of the vote, and therefore, they were not active DTM members. Although Appellants cited Article II (Section 2), Article VI (Section 4.1), and Article VII (Sections 1 and 4) of the bylaws under Count 2, Appellants' complaint merely stated the membership dues in question were in arrears. However, attached to Appellees' answer are dues receipts for each board of trustee that cast a vote on May 14, 2019. The receipts reflect a number of details including the date of the receipt, the member's name, and the date through which the membership dues are paid. After reviewing the dues payment receipts for all members who voted on May 14, 2019, we find none of the voting members were in arrears at the time of the vote.[6]

{¶ 40} There is no set of facts upon which Appellants could prevail on Count 2 — voting bylaw violations — and therefore, there is no merit to Appellants' third assignment of error.

### B. Amendment of the Complaint

{¶ 41} Appellants request that if this court affirms the lower court's granting of the Civ.R. 12(C) motion, the court remand the case and provide Appellants an opportunity to amend their complaint.

{¶ 42} The amendment of a complaint is governed by Civ.R. 15(A) that reads:

(A) Amendments.

---

[6] One member, Laurie Nice, paid her dues on May 14, 2019, so it is arguable that her dues were in arrears at the time of the vote. However, because the final tally was 12-6 in favor of the proposed sale, the vote would have passed even without Laurie Nice's vote.

> A party may amend its pleading once as a matter of course within twenty-eight days after serving it or, if the pleading is one to which a responsive pleading is required within twenty-eight days after service of a responsive pleading or twenty-eight days after service of a motion under Civ.R. 12 (B), (E), or (F), whichever is earlier. In all other cases, a party may amend its pleading only with the opposing party's written consent or the court's leave. The court shall freely give leave when justice so requires. Unless the court orders otherwise, any required response to an amended pleading must be made within the time remaining to respond to the original pleading or within fourteen days after service of the amended pleading, whichever is later.

Civ.R. 15.

{¶ 43} Appellants filed their complaint on May 30, 2019, and a timely answer was filed on June 28, 2019. Pursuant to Civ.R. 15(A), Appellants had the option to amend their complaint, without requesting leave of court, within 28 days of the Appellees' filing an answer. Following that time, Appellants could have requested leave to file an amended answer in accordance with Civ.R. 15. However, Appellants declare that they "legitimately believed that their claims were not subject to dismissal under Rule 12(C) and thus did not request leave to amend." (Appellants' brief at 24.)

{¶ 44} On July 24, 2019, the trial court filed a journal entry that granted Appellees' motion for judgment on the pleadings and dismissed Appellees' counterclaim. The case was dismissed with prejudice — a final appealable order. [7]

---

[7] "A judgment is final and appealable if it satisfies the requirements of R.C. 2505.02 and, if applicable, Civ.R. 54(B)." *State ex rel. Jones v. Athens*, 4th Dist. Athens No. 16CA15, 2017-Ohio-7370, ¶ 28, citing *Chef Italiano Corp. v. Kent State Univ.*, 44 Ohio St.3d 86, 541 N.E.2d 64 (1989), syllabus. Because the trial court's judgment entry dismissed all of the Appellants' lawsuit, it constituted an order that affected a substantial right of the Appellants which, in turn, determined the action. *Coey v. United States*

The only subsequent motion filed by Appellants was their notice of appeal. Appellants now argue they should be permitted to file an amended complaint.

{¶ 45} "After the entry of a final appealable order dismissing the original complaint, a plaintiff can only seek to amend its complaint through the submittal of a Civ.R. 60(B) motion along with a proposed amended complaint." *Roberts v. Columbus City Police Impound Div.*, 195 Ohio App.3d 51, 2011-Ohio-2873, 958 N.E.2d 970, ¶ 24 (10th Dist.), citing *Rahn v. Whitehall*, 62 Ohio App.3d 62, 67, 574 N.E.2d 567 (10th Dist. 1989); *see W. Ins. Co. v. Lumbermans Mut. Ins. Co.*, 26 Ohio App.3d 137, 499 N.E.2d 1 (9th Dist.1985). Appellants' failure to file a Civ.R. 60(B)(5) motion precludes them from now filing an amended complaint. Thus, appellants' fourth assignment of error lacks merit.

{¶ 46} Judgment affirmed.

It is ordered that appellees recover from appellants costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate be sent to said court to carry this judgment into execution.

---

*Health Corp.*, 4th Dist. Scioto No. 96CA2439, 1997 Ohio App. LEXIS 1261, 4 (Mar. 18, 1997). Thus, the judgment entry granting Appellees' motion for judgment on the pleadings constituted a final appealable order pursuant to R.C. 2505.02. Civ.R. 54(B) does not apply in this case where the judgment entry applied to all of the claims of the parties. *Miller v. First Internatl. Fid. & Trust Bldg.*, 113 Ohio St.3d 474, 2007-Ohio-2457, 866 N.E.2d 1059, ¶ 10 ("It is only in cases in which fewer than all the claims or fewer than all the parties are disposed of in the entry" that Civ.R. 54(B) applies.).

A certified copy of this entry shall constitute the mandate pursuant to Rule 27

of the Rules of Appellate Procedure.


_____

RAYMOND C. HEADEN, JUDGE

PATRICIA ANN BLACKMON, P.J., and
EILEEN A. GALLAGHER, J., CONCUR